Clinton **DAVIS** and Ray **Stover**, d/b/a Alaska Enterprises, Appellants,

v.

Gary **McCALL** and Barbara A. **McCall**, Appellees.

No. 2860.

Supreme Court of Alaska.

Sept. 2, 1977.

---

Keith A. Christenson Johnson, Christenson, Shamberg & Link, Inc., Anchorage, for appellants.

Warren C. Colver, Anchorage, for appellees.

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

## OPINION

CONNOR, Justice.

This is an action by homeowners against a building contractor for breach of a remodeling contract. The homeowners, Gary and Barbara McCall, prevailed in the trial court, and the defendant contracting firm Clinton Davis and Ray Stover, doing business as Alaska Enterprises, has appealed from the judgment on several grounds. (The record reflects that Mr. Davis supervised the work, so the defendant and appellant firm will be referred to in this opinion as "Davis.")

The McCalls alleged, and the trial court found, that Davis' work was of poor quality, and that they were required to pay another contractor, Biathlon Construction Company, $14,009.80 to repair and replace Davis' defective work. The trial court also awarded the McCalls $2,000 for diminution of property value because of unrepairable defects. The court then held that Davis had substantially performed his obligation, so that he was entitled to $13,395.50 from the McCalls, the unpaid portion of the contract price. Setting off these awards produced a net judgment of $2,614.30 in favor of the McCalls. Together with costs and attorney's fees, the total judgment in their favor was $7,054.30.

First, Davis argues that the McCalls did not give him adequate notice of their dissatisfaction, and that their recovery is therefore barred. The trial court found that he had received adequate notice. We have examined the record and have concluded that the trial court's finding was not clearly erroneous. Therefore, it must be affirmed. Civil Rule 52(a). The record does not reflect that the McCalls gave Davis notice of every one of the twenty-four separate defects which the court found in Davis' work. But it does reveal that Mrs. McCall repeatedly objected to the quality of the work in general and specific items in particular, and that Davis knew that professional inspectors also considered the work to be of poor quality. It also shows that Davis and his partner took a list of defects from Mrs. McCall, fixed the defects, and then informed her attorney that they had done so and had completed that portion of the job. After that time, the McCalls cannot be expected to have given him additional opportunities to make repairs. *See, e. g., Cox v. Fremont Co. Public Bldg. Auth.,* 415 F.2d 882, 886–87 (10th Cir. 1969); *Aubrey v. Helton,* 276 Ala. 134, 159 So.2d 837, 839 (1964); *Clear v. Patterson,* 80 N.M. 654, 459 P.2d 358, 360–61 (1969) (latent defects); 5 *Williston on Contracts* § 724 (3d ed. 1961).

Davis' second claim of error is to the finding that the McCalls spent $14,009.80 to remedy the defects. This finding also is supported by the evidence. The McCalls paid $14,534.80, plus $100 for a change or-

der, for a total of $14,634.80. Of this sum $625 was for extras which were new work, not repairs of Davis' work. Deducting this $625 produces $14,009.80. There was no error.

■ Davis next argues that the superior court erred by holding his work to too severe a standard. In *Lewis v. Anchorage Asphalt Paving Co.,* 535 P.2d 1188, 1196 (Alaska 1975), we held that a person such as Davis who holds himself out as a qualified building contractor impliedly warrants that he will perform in a workmanlike manner and that the finished work will be reasonably fit for its intended use. There was evidence that a cabinetmaker, a building inspector, and an appraiser considered Davis' work to be well below the ordinary standards of the trade. In light of their testimony, we cannot say that the trial court erred in this regard.

■ Next, Davis complains that two building inspectors who inspected the work should not have been permitted to give oral testimony, because their written reports were admitted into evidence. He bases this argument on the best evidence rule. The best evidence rule is that "in proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." C. McCormick, *Handbook of the Law of Evidence* § 230 (2d ed. 1972). How such a rule can have any application to the mentioned testimony is unexplained in appellant's brief, and is otherwise beyond our powers of logical apprehension. On this point, then, we perceive no error.

The contract for repair and reconstruction entered into by the McCalls and the Biathlon Construction Company was introduced into evidence. Davis makes a number of objections to its introduction. We find none of them meritorious.

■ Since the measure of damages for breach of a construction contract is ordinarily the reasonable cost of completion in accordance with the contract specifications, Restatement of Contracts § 346(1)(a) (1932),

the Biathlon contract was relevant evidence. We believe that the trial court's use of the Biathlon contract price as the amount of damages is amply supported by the testimony of Lee Robbins, the owner of Biathlon. That Robbins, at the time he negotiated the contract, was not aware of the exact terms of the contract between the McCalls and Davis, does not bar use of the Biathlon contract as evidence of the cost of repairs, since a comparison of the two contracts reveals that the work which Biathlon contracted to do was in fact reconstruction of work performed inadequately by Davis. Similarly, we affirm Judge Carlson's finding that the materials Biathlon used, while in some cases of higher quality and more costly than those actually used by Davis, conformed to the specifications of the Davis contract.

■ Assuming, *arguendo,* that the admission of the Biathlon contract into evidence was in violation of the rule against hearsay, as Davis asserts, we hold that such error was harmless in light of the other evidence in this case.

■ Nor was the Biathlon contract inadmissible because it was an illegal contract. Its making and performance did not constitute a breach of the McCalls' contract with Davis. The Biathlon contract was executed on January 8, 1975, more than three months after Davis informed the McCalls, in effect, that he was finished with performance of his contract. The evidence is somewhat sketchy and in conflict concerning whether Biathlon should have obtained a new building permit rather than using the permit initially issued to Davis. Much of the responsibility for the incomplete record on this issue must rest with Davis, who did not raise this issue until mid-trial. In any event, we do not conclude that the lack of a building permit rendered the Biathlon contract inadmissible evidence of the cost of repair and reconstruction.

■ Finally, Davis urges that the award of $4,350 in attorneys fees to the McCalls is excessive and should be set aside. It is considerably higher than that which would

be granted under the schedule of fees in Civil Rule 82(a)(1). In the superior court the McCalls asked for attorneys fees to be awarded under Civil Rule 82(a)(2) because the money judgment was not an accurate criterion for determining the fee. The superior court considered this unopposed motion and apparently found the award to be proper. Appellants' argument has not persuaded us that in the circumstances of this case the trial court abused its discretion.

AFFIRMED.