**Caroline KINGIK, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF ADMINISTRATION, DIVISION OF RETIREMENT AND BENEFITS, Appellee.**

**No. S–13431.**

Supreme Court of Alaska.

Oct. 1, 2010.

---

Sarah M. Curtis and Rebecca S. Copeland, Patton Boggs LLP, Anchorage, for Appellant.

Anne L. Johnson, Assistant Attorney General, and Daniel S. Sullivan, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Caroline Kingik's husband, Morris Welch, was enrolled in the Public Employees' Retirement System (PERS) from 1986 to 1999. Shortly before Welch's retirement, he selected a retirement option that did not include survivor benefits. Kingik consented to this election. Welch died in 2005, and the Division of Retirement and Benefits (the "Division") notified Kingik that she would no longer receive benefits from PERS. Kingik appealed to the superior court, arguing that the Division violated her due process rights and that her waiver of survivor benefits was void. Because the waiver form was clear and because Kingik's waiver of benefits was effective, we affirm.

## II. FACTS AND PROCEEDINGS

Morris Welch was employed by the North Slope Borough from 1986 until his retirement in 1999. He married Caroline Kingik in 1989 and was married to her at his death in 2005. By virtue of his employment with the Borough, Welch was eligible for medical and retirement benefits from the State of Alaska through PERS. Between his retirement and death, Welch received $139,992.97 from PERS, $46,041.90 more than his lifetime contributions to the program.

Welch began inquiring about early retirement in early 1998. The Division mailed him information providing estimates of the monthly income he could expect to receive depending on when he decided to retire and which retirement option he selected. The estimates were accompanied by a retirement application packet that included a newsletter entitled "Rights of Spouses and Dependents." The newsletter explained that if the member chose the "normal, early or level income" options and the member's spouse consented, PERS would "pay monthly benefits to the member during his or her lifetime, but [would] not pay monthly benefits to the spouse after the member's death."

Before his retirement, Welch submitted several forms instructing the Division on how he wanted to receive his PERS benefits. The Application for Retirement Benefits form offered Welch five different options for receiving his retirement benefits. Three options included survivor benefits.[1] The Level Income Option did not include survivor benefits. The Level Income Option pays members a higher monthly benefit until they reach age sixty-five (when many members begin receiving social security payments), a reduced monthly benefit after age sixty-five, and no survivor benefits. Welch chose the Level Income Option on the Application for Retirement Benefits form, affirmed his choice by signing the Retirement Benefits Election Level Income Option form,[2] and ex-

---

1. The Division had no stake in which option Welch chose; each choice had the same actuarial value and was therefore projected to cost the Division the same amount. *See* AS 39.35.450(b); AS 39.35.460 (*repealed by* ch. 4, FSSLA 1996).

2. The Retirement Benefits Election Level Income Option form provides: "I request my retirement benefits in an increased amount prior to age 65 with a reduced amount after age 65, for the remainder of my life .... I understand that the benefit selected is irrevocable."

pressly declined to request additional information concerning spousal benefits when given the opportunity to do so.

Alaska Statute 39.35.450 requires PERS members to provide their spouse's written consent when they select a retirement option that does not include survivor benefits. The one-page Application for Retirement Benefits form Welch signed shows his selection of the Level Income Option and Kingik's notarized signature consenting to his selection.

Welch was later reminded that he did not select a survivor option. In 1998 Welch sued the North Slope Borough over an ordinance that gave an employment preference to Native Americans. The ordinance was later declared "invalid and unenforceable." As part of the 2005 settlement of the discrimination case, the Borough paid nearly four years of retirement benefits into PERS on Welch's behalf and credited him with four more years of service. During the negotiations to settle the discrimination claim, the Division sent Welch a revised projection of his PERS retirement benefits showing the money the Borough anticipated paying into his PERS account. The Division's letter reminded Welch that he had selected the Level Income Option and that "[f]ailure to choose one of the three survivor options means **ALL** benefits, *including health insurance,* will **stop** when you die" and *"Important notice:* ... **there are no survivor options with an LIO."** (Emphasis in original.)

Neither Welch nor his attorney ever contacted the Division to object or protest his selection of the Level Income Option. Had Welch chosen an option with survivor benefits, he would have received a significantly lower monthly benefit during his lifetime. Instead, Welch received enhanced monthly benefits for the remainder of his life, and never attempted to change his election.

Welch died on October 25, 2005. Kingik contacted the Division to report Welch's death and to inquire about the status of his retirement and medical benefits. On November 17, 2005, the Division notified Kingik that her medical coverage had been terminated and that the October retirement check was the final benefit payable under the PERS program.

Kingik wrote to the Administrator of the Division about her right to receive benefits, but the Administrator upheld the Division's initial denial of benefits. Kingik then appealed to the Office of Administrative Hearings, where the parties filed cross-motions for summary adjudication. The administrative law judge (ALJ) granted the Division's motion, in part. The ALJ ruled that Kingik's waiver of survivor benefits was valid and rejected her argument that the Division had a duty to notify Welch that he had an opportunity to re-designate his retirement benefit when he settled his discrimination claim in 2005—the settlement provided no such opportunity. But the ALJ ruled that issues of fact prevented him from deciding as a matter of law what Welch intended when he completed the Application for Retirement Benefits form. After holding an evidentiary hearing on the "single issue of the intent and significance of Mr. Welch's elections," the ALJ found by a preponderance of the evidence that Welch had intended to select the Level Income Option.

Kingik appealed the administrative decision to the superior court, arguing that her own due process rights had been violated, that Welch's due process rights had been violated, and that her waiver of survivor benefits was ineffective. The superior court affirmed the administrative decision, ruling that: (1) Kingik did not have third-party standing to litigate a violation of Welch's rights; (2) substantial evidence supported the administrative decision that the waiver form was objectively clear; (3) Kingik did not have a vested constitutional right to receive survivor benefits when she signed the waiver; and (4) the evidence did not support Kingik's argument that the waiver was invalid for lack of mutual consent or because of a unilateral mistake.

Kingik appeals.

## III. STANDARD OF REVIEW

■ This case requires us to review a superior court order affirming an agency decision. "When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and

directly scrutinize the merits of the [administrative] decision." [3] "No deference is given to the superior court's decision when that court acts as an intermediate court of appeal." [4]

 Two standards of review are relevant in this case. First, we review findings of fact under the substantial evidence test.[5] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [6] Second, we apply the substitution of judgment test when reviewing constitutional questions [7] and questions of law not involving agency expertise.[8] When exercising our independent judgment, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." [9]

## IV. DISCUSSION

### A. Kingik Waived Her Argument That She Has Third–Party Standing To Litigate A Violation Of Welch's Constitutional Rights.

 In her appeal to our court, Kingik argues that she has third-party standing to litigate an alleged violation of Welch's constitutional rights. But she did not make this argument before the ALJ. Instead, Kingik argued at the administrative level that "the operative question ... [is] what, if anything, did the Department do to safeguard Ms. Kingik's constitutional rights[?]" We have held that "[a] party may not raise an issue for the first time on appeal." [10] Because

Kingik did not make her third-party standing argument before the ALJ, it was not properly part of her appeal to the superior court. It is not properly part of the present appeal for the same reason. Kingik waived this argument.

### B. Kingik's Due Process Rights Were Not Violated.

 Kingik argued before the ALJ that the Division's failure to safeguard her constitutional right to survivor benefits violated due process. She contends that the Division should have taken additional steps to "ensure that Ms. Kingik's purported waiver was valid and intentional." The Division countered that Kingik's constitutional rights were not violated because "spouses of retirees do not hold a constitutional right to survivor benefits."

 We adopted the *Mathews v. Eldridge* [11] test for procedural due process claims in *Hilbers v. Municipality of Anchorage*.[12] Under that test, courts identify the specific requirements of due process by considering:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.[13]

---

**3.** *McMullen v. Bell*, 128 P.3d 186, 189–90 (Alaska 2006) (quoting *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003)).

**4.** *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992) (citing *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

**5.** *Id.*

**6.** *Storrs v. State Med. Bd.*, 664 P.2d 547, 554 (Alaska 1983) (citing *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963)).

**7.** *McMullen*, 128 P.3d at 190 (citing *Holding v. Municipality of Anchorage*, 63 P.3d 248, 250 (Alaska 2003)).

**8.** *Handley*, 838 P.2d at 1233.

**9.** *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**10.** *Mullins v. Oates*, 179 P.3d 930, 941 n. 31 (Alaska 2008) (quoting *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001)).

**11.** 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**12.** 611 P.2d 31, 36–37 (Alaska 1980).

**13.** *Id.* at 36 (quoting *Mathews*, 424 U.S. at 334–35, 96 S.Ct. 893).

We need not decide whether Kingik had a protected property interest in Welch's PERS retirement benefits because we conclude the Division's procedures satisfied due process. Kingik claims an interest in the receipt of survivor benefits if Welch predeceased her. The Division's interest is in the efficient administration of PERS. Kingik's position is that the Division's procedures were inadequate because it could have modified its forms to "more clearly and concisely convey to its members (and their spouses) the effects and consequences of their selections." But our conclusion that the waiver form is reasonably clear disposes of Kingik's argument; the likelihood of an erroneous deprivation of survivor benefits caused by the form is very low because of the waiver form's plain language. Applying the *Mathews* factors, we conclude that Kingik was not denied due process.

### C. Kingik's Waiver Of Survivor Benefits Was Effective.

#### 1. The waiver form was clear.

■ Kingik argues her waiver of survivor benefits is invalid because the waiver form she signed is confusing and misleading. Kingik testified that she thought the Application for Retirement Benefits form's waiver only affected her right to receive dental and vision coverage through PERS. She explained that her understanding of the waiver's effect was based on conversations she had with Welch where, she alleges, Welch assured her that she would receive surviving spouse benefits and medical coverage after he died. Kingik admitted that she "[m]ost likely" did not read the form before signing it. The Division argues that, despite Kingik's subjective misunderstanding, the waiver is objectively clear

and effectively describes the rights spouses relinquish by signing it.

The clarity of the Division's waiver form is a legal question we review de novo.[14] Both parties cite to ERISA regulations governing waiver and agree that the waiver language on the form Kingik signed was required to describe or explain the right the spouse is giving up and affirmatively state that the spouse is giving up a right rather than contain generalized and indeterminate language.[15]

The ALJ concluded that the waiver form "reasonably describes or explains the right the spouse is giving up" and "is very clear in categorizing three options as 'Survivor Options.'" Directly under the section where the member selects his or her retirement benefit option, the form cautions: "**IMPORTANT ... ALL BENEFITS INCLUDING MEDICAL COVERAGE WILL CEASE UPON DEATH OF THE APPLICANT** if a survivor option is not selected." (Emphasis in original.) Following this warning, the form contains a section entitled "**SPOUSE'S WAIVER OF SURVIVOR OPTION**" with a signature line for the spouse to "acknowledge and approve the benefit selected" and to "freely waive entitlement to continuing survivor benefits ... upon the death of the named applicant." (Emphasis in original.) Because the survivor options are clearly designated, because the form unambiguously warns that "all benefits including medical coverage" will cease on the applicant's death if a survivor option is not selected, and because the form contains a clearly-worded waiver clause, we agree with the ALJ that the waiver plainly and adequately describes both the rights and the effect of signing the form.

---

**14.** *Rockstad v. Erikson,* 113 P.3d 1215, 1219 (Alaska 2005).

**15.** ERISA provides that a participant "may elect at any time during the applicable election period to waive the qualified joint and survivor annuity form of benefit." 29 U.S.C.A. § 1055(c)(1)(A)(i) (West 2009). But such election shall not take effect unless "(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary ... which may not be changed without spousal consent ... and (iii) the spouse's consent acknowledges the effect

of such election and is witnessed by a plan representative or a notary public." 29 U.S.C. § 1055(c)(2)(A) (2006). PERS is not governed by ERISA because PERS falls under the governmental employee benefit plan exception. *See* 29 U.S.C. § 1002(32) & 1003(b)(1) (2006). We understand both parties cite to ERISA by analogy only, and accept as uncontested their joint position that the waiver on the Application for Retirement Benefits form should be measured by this standard.

Although we do not believe the Application for Retirement Benefits form's layout or language obfuscates the meaning of the waiver Kingik signed or the validity of Welch's election, we agree with the ALJ that the Division's forms could be improved. For example, some of the Application for Retirement Benefits form's language is arguably internally inconsistent. The form's waiver section states that "[i]f you are married, the waiver below must be completed to select a regular income benefit." But the term "regular income benefit" is not an option; this phrase appears nowhere else on the form.

The Division's forms could be improved, but we agree with the ALJ's conclusion that the Application for Retirement Benefits form describes the rights Kingik relinquished by signing the waiver. We are satisfied that the form adequately explained that Kingik's benefits would stop upon Welch's death if no survivor option was selected.

### 2. Kingik bore the risk of her unilateral mistake.

Kingik argues that she is entitled to void the waiver because she was mistaken as to its basic assumption—that signing it would affect her right to receive survivor benefits.

The Restatement (Second) of Contracts § 154 explains that a party bears the risk of the mistake when: "(a) the risk is allocated to him by agreement of the parties; or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient; or (c) the risk is allocated to him by the court on the ground that it is reasonable under the circumstances to do so."[16]

 Kingik argues that she does not bear the risk of her mistake under Restatement § 154(b) and (c). Regarding subsection (b), she argues she "was not aware that she had only limited knowledge with respect to the facts to which the mistake related" because she "believed she was waiving one thing when she purportedly waived another." The

Division counters that Kingik bore the risk of the mistake because she "acted with what she knew was limited knowledge but treated that knowledge as sufficient." Kingik's admission that she "[m]ost likely" did not read the waiver form or other parts of Welch's retirement application undermines her ability to claim mistake as a defense. If she did not read the waiver, she must have known she was acting with limited knowledge of the contents and meaning of the contract, yet her signature indicates that she treated her knowledge of it as sufficient. Under these circumstances, the law requires that Kingik bear the risk of her mistake.

 Kingik also argues that the risk of error should be allocated to the Division under Restatement § 154(c) because "it was the Division's duty to appropriately inform [Welch] of his rights, and because it is the Division's forms which caused the mistake in this case." We have subscribed to the principle that the risk of mistake should be borne by the party who has the greater interest in the consequences of a contract term.[17] The Division had no financial interest in Welch's election because its liability under each option was actuarially equal. The superior court observed that "[i]t seems fair to say that the information about what rights were being waived was of great importance to [Kingik] while of lesser importance to [the Division], so under the facts of this case, the risk of mistake should be assigned to [Kingik]." Given the relative disparity in the parties' interests, we agree that Kingik properly bore the risk of her unilateral mistake.

### 3. The contract does not fail for lack of mutual assent.

 Kingik alleges that she did not subjectively intend to waive anything other than dental and vision coverage. Therefore, she argues, there was no "meeting of the minds on the essential terms of the offer" and she did not form a valid contract with the Division. Contract formation is a legal question not involving agency expertise, so we apply

---

**16.** Restatement (Second) of Contracts § 154(a), (b), and (c).

**17.** *See Wasser & Winters Co. v. Ritchie Bros. Auctioneers (Am.), Inc.,* 185 P.3d 73, 80 (Alaska 2008).

the substitution of judgment standard of review.[18]

■■■■■ Mutual assent is an elementary requirement of an enforceable contract.[19] An "agreement to a contract may be imputed based on the reasonable meaning of a party's words and acts."[20] "Because a contract is assessed under an objective standard, if a party objectively manifested an intention to be bound by the terms of a contract, that assent cannot be defeated by evidence of the party's . . . subjective contrary intentions."[21] Kingik signed and notarized a waiver that contained a plainly worded clause stating that her benefits would cease unless a survivor option was selected. Her signature was an objective manifestation of intent sufficient to create an enforceable contract with the Division. Only Kingik's objective manifestations of intent may be considered.[22] Her unexpressed subjective intentions are irrelevant to the mutual assent analysis as a matter of law.[23] Therefore, the contract does not fail for lack of mutual assent.

■■■■■ Finally, Kingik argues that she and the Division had a material misunderstanding and that this misunderstanding prevented contract formation. She points out that while the Division intended the waiver to be a waiver of survivor benefits, she only meant it to waive her vision and dental benefits. The Restatement (Second) of Contracts § 20 recognizes an exception to the normal mutual assent rules for certain misunderstandings. Under the Restatement, "[t]here is ·no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and . . . neither party knows or has reason to know the meaning attached by the other."[24] This portion of Kingik's argument fails because, as the Division points out, it had no way of knowing that Kingik subjectively intended to waive only vision and dental coverage, but Kingik did have reason to know that the Division intended the waiver to affect her survivor benefits. Indeed, the waiver Kingik signed contained no reference to dental or vision coverage, but it did include express language regarding waiver of survivor benefits. The Restatement's exception for misunderstandings does not support Kingik's claim.

**D. Substantial Evidence Supports The ALJ's Conclusion That Welch Intended To Select The Level Income Option.**

■■■■ The ALJ held an evidentiary hearing to determine which option Welch intended to select when he completed the Application for Retirement Benefits form. Having reviewed the record, we conclude that substantial evidence supports the ALJ's finding that Welch intended to select the Level Income Option.

The ALJ found that Welch was a "fairly sophisticated man with excellent literacy" who was capable of reading and understanding the Division's forms. While not extensive, the record includes evidence adequate to support this finding: Welch worked for the North Point School District as a supervising operator of a Point Hope utility, he started a home business selling Alaska Native art, and he authored an article that the ALJ read about the experience of building a website to sell art.

Other documentary evidence supports the ALJ's finding that Welch intended to select the Level Income Option. Welch consistently chose the Level Income Option as his preferred choice for receiving his retirement benefits: he unequivocally marked the Level Income Option on the Application for Retirement Benefits form and included Kingik's waiver as required by the form; he signed

**18.** *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

**19.** *Howarth v. First Nat'l Bank of Anchorage,* 596 P.2d 1164, 1167 (Alaska 1979).

**20.** *Id.*

**21.** *Dutton v. State,* 970 P.2d 925, 928 (Alaska App.1999) (citing *Howarth,* 596 P.2d at 1167).

**22.** *Id.*

**23.** *Id.*

**24.** Restatement (Second) of Contracts § 20(1)(a) (1981).

and submitted the Retirement Benefits Election Level Income Option form; he expressly declined the Division's offer to provide him information concerning spousal benefits when given the opportunity to request it; he received enhanced monthly benefits for several years without objection; and he never attempted to change his election—even after the settlement of his 2005 discrimination claim when he was reminded that the Level Income Option did not include survivor benefits. We conclude substantial evidence supports the ALJ's finding that Welch intended to select the Level Income Option.

## V. CONCLUSION

For the reasons explained above, the decision of the ALJ is AFFIRMED.

WINFREE, Justice, not participating.