**3–D & CO., Appellant,**

**v.**

**TEW'S EXCAVATING, INC., Appellee.**

**No. S–13425.**

Supreme Court of Alaska.

Aug. 26, 2011.

---

Kevin Williams and Louis A. Breuer, Willow, for Appellant.

Jason L. Bergevin, Royce & Brain, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

This case involves a contract dispute between 3–D & Co. and Tew's Excavating, Inc. The dispute is over the terms of a construction contract for two roads in Scenic View Subdivision of the Matanuska–Susitna Borough. 3–D & Co. contends that the superior court applied the wrong legal standards and arrived at the wrong factual conclusions regarding the terms of the contract by: (1) admitting extrinsic evidence to determine the meaning of the contract, (2) applying the preponderance of the evidence standard of proof rather than a clear and convincing evidence standard, (3) finding no material breach of the contract, (4) finding that the contract was for a fixed price, (5) finding that both parties assented to constructing a T–intersection rather than a cul-de-sac, (6) finding that a construction change would likely be accepted by the Matanuska–Susitna Borough, (7) awarding damages for the culvert work, (8) finding that there was not sufficient proof for damages on road width deficiencies, (9) finding that there was no breach of contract in not meeting the contract deadline, (10) erroneously applying theories of estoppel or waiver in awarding no damages, (11) considering the duty to notify and provide an opportunity to cure, and (12) failing to award damages for the incidental cost of removing the lien placed on the property. We affirm the superior court's decisions in all respects.

## II. FACTS AND PROCEEDINGS

3–D & Co. (Derr) is an Alaskan realty development corporation wholly owned by Daniel Derr. Derr purchased 40 acres of land within the Matanuska–Susitna Borough (the Borough) intending to develop it into Scenic View Subdivision. The land was located just beyond the developed portion of Foothills Boulevard.

Tew's Excavating, Inc. (Tew) is an Alaskan corporation whose business involves road maintenance, contracting work, and road construction. Prior to his contract with Derr, Tew had completed two road construction projects: one for the City of Houston and another for a private subdivision. Both jobs utilized three inch minus gravel.[1] In addition Tew had at least three contracts with the Borough to provide road maintenance.

In late 2005 or early 2006 Derr contacted Tew about constructing roads in his new subdivision. Tew provided Derr with an estimate for the work on one of these roads, Foothills Boulevard. This estimate set a price of $30 per linear foot to construct the road to Borough standards. The price estimate indicated, "This will not include any gravel, engineering, culverts or clearing." At the time of the estimate, Derr anticipated performing the clearing and grubbing on Foothills Boulevard himself. Derr was unable to complete the clearing and grubbing because he was arrested for felony DUI. Derr spent the next two years in jail and residential treatment. Due to the arrest Tew and Derr discussed whether the project would continue. Tew visited Derr multiple times to discuss various options for the project. In May 2006 Derr and Tew orally agreed that Tew would clear and grub the road—charging hourly—and construct Foothills Boulevard pursuant to the terms and conditions of the estimate. The parties did not create a written agreement about the price for the clearing and grubbing.

In May 2006 Derr and Tew began discussing the construction of Range View Drive. By July 2006 Tew provided an oral estimate for the work and Derr agreed to the terms. Tew was now responsible for building both Foothills Boulevard and Range View Drive.

Tew billed Derr periodically for the work on Derr's land in the spring of 2006. Disputes arose about the bills during this period. Tew provided Derr with invoices detailing the equipment used and hours worked. Derr believed that the work was taking too long and he was paying too much. The parties negotiated and revised several versions of a

---

1. "Three inch minus" describes gravel that will pass through a sieve with three-inch by three-inch square openings. *See* Alaska Dep't of Transp. & Pub. Facilities, Alaska Field Guide for Soil Classi-

fication 1–2 (2003), *available at* http://www.dot.state.ak.us/stwddes/desmaterials/mat_geology/assets/pdf/geotechman/soilguide.pdf.

contract before they agreed to sign a written contract on August 14, 2006.

The written contract specified: "All gravel for road[s] will be taken from Tract A. Per [the Borough's] preliminary plat." Derr wanted to turn the gravel pit in Tract A from which road gravel was to be removed into a pond, and had specific instructions for how the gravel should be removed. Tew did not inspect the gravel prior to the formation of the contract. The available gravel was sufficient to meet the Borough's standards for the bottom 18 inches of the road but insufficient for the top six inches.[2] Tew requested that Derr rent screening equipment needed to ensure three inch minus gravel was used for the top of the road and offered to do the physical labor involved in screening the gravel. Derr did not want to incur the costs of this process, so Tew suggested he could try processing the gravel using graders and gird-rollers to crush smaller rocks and remove larger rocks. Tew explained that this processing would take longer than screening and would not produce true three inch minus gravel. Tew said that the Borough would probably approve the road anyway and indicated that he had used the same process on a previous job that passed the Borough's inspection. Derr agreed to process the gravel using Tew's equipment.

Tew processed the gravel as he and Derr agreed, completing the project in late October 2006. When he completed the processing, he informed Wayne Whaley, Derr's on-site representative, that the project was complete; Whaley agreed. Whaley inspected the project and determined that it was ready for the Borough's inspection. After Whaley's inspection Tew moved his equipment off of Derr's property.

Derr never informed Tew that he felt that Tew's work was incomplete or insufficient. Derr measured random road widths and determined the road was not uniformly 24 feet wide. He felt some of the culvert installations were incomplete or in need of repair.

He noted that some of the rocks in the road were not three inch minus and some of the rocks in the ditches were not six inch minus, thus not meeting Borough standards. He felt that the angle of the road slope was improper at various points. He was also unsatisfied with the intersection of Range View and Rolling Hills because it formed a T–intersection rather than a cul-de-sac.

The only information that Tew received about potential problems was a communication from Whaley indicating that minor culvert repairs or modifications might be required. Tew was willing to make the repairs if needed.

In the fall of 2006, while Tew was still working on the project, Derr solicited bids from other companies to complete work on the roads. Derr received bids from Northern Dame (Fall 2006 oral estimate),[3] Kennerson Excavation (October 12, 2006),[4] and Steppers Construction (October 17, 2006) to complete road construction. He chose not to use any of these contractors and did not inform Tew that Tew had not completed the job to his satisfaction.

Tew submitted a final written invoice to Derr for the remaining $50,000 Derr owed. When Derr did not pay this final invoice, Tew phoned Derr several times about the money but still did not receive payment. In January 2007 Tew filed a $50,000 lien against the property. Derr's lawyer sent a letter acknowledging that $50,000 was owed upon completion of the project but claimed the project was not complete because a Borough inspection had not occurred and the roads did not meet Borough specification. This was the first time Tew was made aware that Derr was not completely satisfied with the work Tew had done. Nevertheless, Derr paid off the lien in three months.

Derr requested a formal Borough inspection in March 2007. Tew was neither notified of the inspection nor invited to attend. The inspection report by ArcTerra Engineering was submitted to the Borough; it noted

---

**2.** The Borough requires three inch minus gravel for the top six inches.

**3.** Northern Dame submitted a second proposal to complete the road projects on October 7, 2008.

**4.** Kennerson submitted a second proposal to complete the road projects on November 1, 2007.

that with the exception of a few minor repairs the road work was completed to Borough standards. The inspection report was not shared with Tew. Another formal inspection was conducted by the Borough in July 2007. The inspection resulted in a punch list [5] with a few minor items that required correction. Tew was not provided the punch list or copies of correspondence with inspectors. Tew was never provided an opportunity to fix the minor items identified on the punch list.

Derr filed a complaint alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Alaska's lien statute, AS 34.35.074(b).[6] An eight-day trial began on December 2, 2008.

The superior court determined that Derr proved breach of contract regarding the requirement that the roads be 24 feet wide, but that Derr had not proven damages to any degree of certainty regarding the breach, and that Derr failed to provide Tew a reasonable opportunity to cure. The court also found several deficiencies with culvert work, road slope, and angles. The court, in accordance with the substantial performance doctrine, held that Tew should pay Derr: (1) $800 for culvert deficiencies, (2) $5,000 for slope cover deficiencies, and (3) $5,000 for angle deficiencies.

Derr appeals.

5. Punch lists are commonly used in the construction industry to indicate a list of tasks or items requiring completion.

6. AS 34.35.074(b) states:

A claimant who gives a stop-lending notice or has a claim of lien recorded under AS 34.35.075 and who fails to promptly revoke the stop-lending notice or remove the claim of lien from the record upon receiving payment in full on the claim or discovering that the stop-lending notice or claim of lien is in error, unjust, premature, or excessive is liable for actual and consequential damages caused by giving the stop-lending notice or improperly recorded claim of lien plus costs, including reasonable attorney fees.

7. *Soules v. Ramstack*, 95 P.3d 933, 936–37 (Alaska 2004) (citations omitted).

8. *Id.* at 936.

## III. STANDARD OF REVIEW

 We review the trial court's factual determinations, including those pertaining to the credibility of witnesses, for clear error.[7] We will find clear error only if "after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made."[8] All factual findings are reviewed "in the light most favorable to the prevailing party below."[9] "We give particular deference to the superior court's factual findings when, as here, they are based primarily on oral testimony, because the superior court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[10]

 We apply our independent judgment to questions of law.[11] "When the meaning of a contract is at issue, we review the superior court's interpretation of the contract terms using our independent judgment."[12]

## IV. DISCUSSION

### A. The Trial Court Did Not Err In Admitting Extrinsic Evidence In Determining The Meaning Of The Contract.

 The superior court found ambiguity in the contract over who was responsible for producing the three inch minus gravel. The superior court looked to the interactions between the parties to resolve the ambiguity.[13]

9. *N. Pac. Processors, Inc. v. City & Borough of Yakutat*, 113 P.3d 575, 579 (Alaska 2005) (citation omitted).

10. *Josephine B. v. State, Dep't of Health & Social Servs., Office of Children's Servs.*, 174 P.3d 217, 222 (Alaska 2007).

11. *N.W. Cruiseship Ass'n of Alaska, Inc. v. State, Office of Lieutenant Governor, Div. of Elections*, 145 P.3d 573, 576 (Alaska 2006) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

12. *Romero v. Cox*, 166 P.3d 4, 8 (Alaska 2007) (citing *N. Pac. Processors, Inc.*, 113 P.3d at 579).

13. Derr argues that the contract was fully integrated and that examining extrinsic evidence to determine the meaning of the contract was inappropriate. The August 14, 2006 agreement was not integrated making this argument inapplicable.

Derr contends that four provisions of the contract establish that Tew was responsible for producing the three inch minus gravel required for the top six inches of both Foothills Boulevard and Range View Drive: (1) "Build Foothills Boulevard, approximately 4,000 feet for $30.00 per foot. Footage verified at completion. (Except clearing.)"; (2) "Build Range View Drive in Scenic View Subdivision from the intersection of Foothills Boulevard to property line between lots # 3 and # 4, Block 5, Scenic View Subdivision, per preliminary plat map approved by [the Borough's] Platting Board. At this juncture build temporary Cul de Sac to [Borough] satisfaction."; (3) "All road work and back slopes to meet [Borough] specifications."; (4) "All gravel for road will be taken from Tract A. Per [Borough] preliminary plat." Derr argues that the superior court effectively added the phrase "except not screening or processing gravel into 3 [inch] minus form" into the contract after the terms pertaining to building Foothills Boulevard and Range View Drive. Derr also contends that, in accordance with *Alaska Northern Development v. Alyeska Pipeline Co.*[14] and *Lewis v. Anchorage Asphalt Paving Co.*,[15] the superior court should have held that the contract was an end-result contract and Tew was responsible to ensure that the road met Borough specifications. According to Derr, this would mean Tew was responsible for providing three inch minus gravel.

■ A contract is an end-result contract (1) "[i]f no other meaning is reasonable,"[16] (2) "[t]he contract only calls for a certain result,"[17] and (3) "[t]he nature of the contract determines to a large degree who is liable for defects in the end product."[18] To establish that the contract in this case was an end-result contract, Derr would need to prove that the superior court clearly erred in determining that the written contract did not establish who had to provide the three inch minus gravel and that the nature of the written contract did not determine who was responsible for the defect of not having three inch minus gravel.

■ The superior court found ambiguity in the contract because the contract did not indicate who was responsible for producing the three inch minus gravel. The superior court examined both the written contract and extrinsic evidence in determining that the contract contained an ambiguity.[19] The contract contained two pertinent conditions: (1) "All gravel for road will be taken from Tract A," and (2) "All road work and back slopes to meet [Borough] specifications." The superior court focused on the meaning of "All gravel for road will be taken from Tract A." The contract term specified that Derr was responsible for providing the gravel for road construction but did not discuss who was responsible for ensuring that the gravel was screened to three inch minus. Derr believed that Tew was responsible for ensuring that the gravel extracted from Tract A was suitable to meet the Borough's requirements. Tew, who was not given the opportunity to inspect the gravel, believed Derr was responsible for providing the three inch minus gravel.

The superior court looked to the interactions between the parties to resolve the ambiguity. Very little written documentation exists detailing the negotiations between Tew and Derr. Tew provided Derr with a written quote for the work. This quote was for Tew to construct Foothills Boulevard for $30 per linear foot, including the cost of all labor and equipment. The quote expressly excluded "any gravel, engineering, culverts or clearing." When the quote was provided, Tew had been unable to inspect the gravel on

**14.** 666 P.2d 33 (Alaska 1983).

**15.** 535 P.2d 1188 (Alaska 1975).

**16.** *Alaska N. Development,* 666 P.2d at 39 (holding as a general rule of contract law: "If no other meaning is reasonable, the court shall rule as a matter of law that the meaning is established.").

**17.** *Lewis,* 535 P.2d at 1197.

**18.** *Id.*

**19.** Courts may always examine extrinsic evidence in determining what a contract means. *Froines v. Valdez Fisheries Dev. Ass'n, Inc.,* 75 P.3d 83, 87 (Alaska 2003); *W. Pioneer, Inc. v. Harbor Enters., Inc.,* 818 P.2d 654, 657 (Alaska 1991).

Tract A. Tew was aware of the potential risks associated with using uninspected gravel. Tew discussed these concerns with Derr, including the potential need to screen the gravel. Given these risks, Tew excluded gravel from the price in his January quote.

In July 2006 Tew provided invoices 673 and 674 to Derr reflecting work on Foothills Boulevard and Range View Drive. Both invoices indicated Tew would not provide gravel, and invoice 674 explicitly states, "Owner to provide approved onsite gravel."

Derr did not want to incur the costs of screening the gravel when Tew and Derr realized that the gravel on Tract A would not meet the Borough's specifications. Tew indicated he could attempt to process the gravel using his equipment. Derr agreed to process the gravel, even after Tew explained that it would not result in true three inch minus gravel and might not meet Borough specifications.

These facts taken together support the superior court's conclusion that the written contract was ambiguous regarding who was responsible for the three inch minus gravel. The superior court did not err in considering extrinsic evidence and was not clearly erroneous in concluding that Derr ultimately took the risk that the processed gravel might not result in true three inch minus gravel.

**B. The Superior Court Did Not Err In Applying A Preponderance Of The Evidence Standard Rather Than A Clear And Convincing Proof Standard.**

■ Derr argues that the superior court reformed the contract and should have applied a clear and convincing proof standard rather than a preponderance of the evidence standard. Derr claims that the court reformed the contract by adding the phrase "except not screening or processing gravel into [three inch] minus form" into the contract after the phrases "[b]uild Foothills Boulevard" and "[b]uild Range View Drive." Derr argues that the superior court inserted this phrase based on a theory of mutual

mistake. In instances of contract reformation based on mistake courts should apply a clear and convincing standard of proof.[20]

However, neither of the parties raised any claim of mutual mistake before the superior court. Neither of the parties requested reformation of the contract. Therefore the superior court did not base its decision on a theory of mutual mistake. The superior court properly applied the preponderance of the evidence standard to Derr's breach of contract claim.[21] Because the superior court did not reform the contract, but properly resolved contractual ambiguities by examining extrinsic evidence, it applied the proper evidentiary standard.

**C. The Superior Court Did Not Err In Finding That Tew Did Not Materially Breach The Contract.**

**1. Three inch minus gravel**

■ Derr argues that Tew materially breached the contract by not providing three inch minus gravel. Derr also argues that a material breach occurred because there was no consideration provided for the contract modification.

The superior court did not find a material breach because there was an ambiguity in the contract regarding responsibility for screening gravel to three inch minus. As we explained above, the superior court resolved the ambiguity by looking to extrinsic evidence, and reasonably determined that Tew was not responsible for providing three inch minus gravel. We conclude that the superior court did not clearly err in making these factual determinations. Therefore, the superior court did not err in determining that Tew did not materially breach the contract because Tew met the conditions of the contract regarding three inch minus gravel. It follows that there was no contract modification requiring additional consideration.

**2. Leaving the job site on October 25, 2006**

■ The superior court found that the Tew left the job site with the understanding

**20.** *Kupka v. Morey,* 541 P.2d 740, 749–50 (Alaska 1975).

**21.** *Fletcher v. Trademark Const., Inc.,* 80 P.3d 725, 731 (Alaska 2003).

that the job was complete, except for a few minor fixes. Derr argues that Tew breached the contract when he left the job site on October 25, 2006 because the roads were not approved by the Borough.

Tew told Derr he completed the project and was preparing to leave the job site. Whaley, who was Derr's "eyes and ears" on the job site, believed the job was substantially completed when Tew left. Derr never indicated to Tew that the job was incomplete or insufficient before Tew left the job site. When Tew left the job site he believed he had completed the project.

Derr did not request a Borough inspection before Tew left the job site. Derr, not Tew, was in a position to request approval from the Borough; but Derr did not request a formal inspection until March 2007, five months after Tew left the job site. The inspection resulted in a report indicating that only minor items needed to be addressed. A second inspection was conducted in July 2007, resulting in a punch list indicating only a few minor items required correction. Neither the reports nor the punch list was provided to Tew. The evidence supports the superior court's conclusion that Tew had substantially completed the contract when he left in October 2006.

### D. The Superior Court Did Not Err In Finding That The Construction Of Foothills Boulevard Was For A Fixed Price.

█ The superior court found that there was an inconsistency between the first and second pages of the contract over whether the contract was for a fixed price. The language on the first page of the August 2006 contract stated, "Build Foothills Boulevard, approximately 4,000 feet for $30.00 per foot. Footage verified at completion. (Except clearing.)." The language in this part of the contract standing alone was unambiguous—it stated that Tew would be paid $30 per foot and the length would be determined at the

end of the project. The second page of the contract contained a provision denominated "Terms of Payment," which established a fixed price for the contract as a whole. The Terms of Payment listed four tasks and payment corresponding to the completion of those tasks, and a total payment for completion of the contract. This Terms of Payment provision resulted from the negotiation process preceding the formation of the written contract. The two terms together created an inconsistency in the contract. The superior court found the Terms of Payment contained in the signed August contract to be an alteration of the original end-result agreement that was based on the July invoices provided by Tew. The superior court observed that reference to the July 2006 invoices in the Terms of Payment section of the contract indicated that the parties agreed to a fixed price contract for completing Foothills Boulevard. The superior court used the reference to the invoices to resolve the inconsistency and found that the contract was for a fixed price. Derr claims that the superior court should have found that the contract for Foothills Boulevard was for $30 per foot and not a fixed price.

█ We define an inconsistency as "the absence of reasonable harmony in terms of the language *and* respective obligations of the parties."[22] We have held that courts "may initially turn to extrinsic evidence in construing a contract,"[23] especially when there is an ambiguity or inconsistency.[24]

The factual record supports the superior court's conclusion that the inconsistency in the contract is properly resolved by viewing the Terms of Payment as an alteration of the original quote and a true representation of the contract's fixed price payment term. It appears that neither Tew nor Derr took steps to verify the length of Foothill Boulevard when the road was completed. Tew submitted a final invoice matching the Terms of Payment listed in the contract. Derr did not dispute the amount of the invoice. Derr

**22.** *Alaska N. Dev. v. Alyeska Pipeline Co.*, 666 P.2d 33, 40 (Alaska 1983) (citation omitted).

**23.** *Alyeska Pipeline Serv. Co.*, 645 P.2d at 771 n. 1.

**24.** *W. Pioneer, Inc. v. Harbor Enters., Inc.*, 818 P.2d 654, 657 (Alaska 1991).

did not immediately pay the invoice, but he argued that payment was delayed because he could not access funds, not because he disputed the amount on the invoices. The January 2007 letter sent by Derr's attorney claimed payment was not due because the project was not completed. The letter did not challenge the amount of the invoice. The letter cited three contract provisions but did not cite the provision indicating that the cost would be determined by the length of Foothills Boulevard. Derr's January 2007 complaint did not include a claim for adjustment of the final payment based on the length of Foothills Boulevard; neither did his amended complaint. Derr's Initial Disclosures did not include a calculation of overpayment resulting from the length measurement of Foothills Boulevard. These facts taken together support the superior court's conclusion that the contract ambiguity could be properly resolved in favor of a fixed price contract as written in the Terms of Payment portion of the contract. The superior court's conclusion was not clearly erroneous.

### E. The Superior Court Did Not Err In Finding That Derr Assented To Building A T–Intersection Rather Than A Cul–De–Sac.

The superior court found that the parties agreed to abandon the planned cul-de-sac and replace it with a T–intersection. Derr argues that the "weight of the trial evidence shows that Derr never manifested assent" to the construction of a T–intersection rather than a cul-de-sac. We recognize that assent to a contract term "may be imputed based on the reasonable meaning of a party's words and acts." [25]

Significant evidence exists to support the superior court's determination that Derr assented to construct a T–intersection rather than a cul-de-sac. At the start of construction on the cul-de-sac it became apparent that the cul-de-sac was improperly placed and would both result in a waste of material and reduce the size of connecting lots. Another significant problem was that the cul-de-sac was placed in the middle of a hill on what

would eventually be a through road. Derr and Tew discussed enlarging the intersection of Range View Drive and Rolling Hills to provide a place for road maintenance and emergency response vehicles to turn around. Based on these conversations, Tew began to build a T–intersection rather than a cul-de-sac. The agreement to build the T–intersection cost Tew time in the short run, but he felt that it would save time in the long run because the cul-de-sac was temporary. Tew relied on Derr's agreement to accept the substitute work by proceeding to build the T–intersection. The words and actions of the parties indicate that Derr assented to constructing a T–intersection.

The superior court also weighed the credibility of the witnesses in making its determination that Derr assented to the construction of a T–intersection rather than a cul-de-sac. We give particular deference to the superior court's factual findings when, as here, they are based primarily on oral testimony, because the superior court, not this court, judges the credibility of witnesses and weighs conflicting evidence.[26] Tew provided detailed testimony about his conversations with Derr. Derr, on the other hand, testified that he did not realize the cul-de-sac was not being built until October, just as the project was being completed. The superior court found Tew's explanation of events had a "greater ring of truth to them." The superior court also found Derr's testimony less credible. The court noted that Derr appeared forgetful and disorganized. Derr had difficulty presenting supporting evidence. Given the superior court's assessment of credibility and the factual evidence, strong support exists for the conclusion that Derr assented to the construction of a T–intersection rather than a cul-de-sac. The superior court's finding is not clearly erroneous.

### F. The Superior Court Did Not Err In Finding The T–Intersection Would Likely Be Accepted By The Borough.

The superior court found that Tew "reasonably and correctly" informed Derr that

25. *Kingik v. State, Dep't of Admin., Div. of Ret. & Benefits,* 239 P.3d 1243, 1251 (Alaska 2010) (citing *Howarth v. First Nat'l Bank of Anchorage,* 596 P.2d 1164, 1167 (Alaska 1979)).

26. *Josephine B. v. State, Dep't of Health & Social Servs., Office of Children's Servs.,* 174 P.3d 217, 222 (Alaska 2007).

the Borough would accept either a cul-de-sac or a T–intersection to meet Borough requirements. The superior court also determined that the Borough would likely accept the substitution of the cul-de-sac for the T–intersection once Derr made a request for a modification in his initial plans. Derr argues that no evidence supports the superior court's conclusion that the Borough would likely accept the T–intersection as a replacement for the cul-de-sac.

As discussed above, significant support exists for the determination that Derr assented to the T–intersection as a substitution for the cul-de-sac. Derr's agent Whaley indicated that he had a reasonable belief that the Borough would approve a T–intersection modification and construction. Regardless, the modification of the contract was not dependent upon Borough approval. Although the superior court was not required to determine whether the T–intersection would likely be approved by the Borough, its factual assessment is not clearly erroneous.

### G. The Superior Court Did Not Err In Its Award Of Damages For Performing The Required Culvert Work.

Derr argues that if we find that Tew—and not Derr—was responsible for providing the three inch minus gravel, then the superior court improperly found that Derr was responsible for some of the delays in performing the culvert work. As explained above, we affirm the superior court's finding that Derr was responsible for any deficiencies in the three inch minus gravel, so Derr's claim for culvert work damages fails.[27]

### H. The Superior Court Did Not Err In Finding Derr Did Not Prove His Damages Regarding Road Width Deficiencies.

The superior court determined that Tew failed to meet the road width requirements at several points, but also found that Derr did not prove with sufficient certainty the number of places where the width was deficient or a reasonable cost for repairing the deficiencies to warrant an award of damages. Derr argues that the superior court erred in finding that he had not proved the number of road width discrepancies and the costs of remedying them.

A party seeking to recover damages is required to present sufficient evidence of his damages to provide a reasonable basis for the trier of fact's award.[28] "While the amount of damages need not be proven with mathematical accuracy, there must be 'some competent evidence' upon which to base an award."[29] The amount of awarded damages is reviewed for abuse of discretion.[30]

Derr contends that out of a dozen measurements of road width on Foothills Boulevard, only one or two met the designated contract requirement. Derr did not record any measurements along Range View Drive. The superior court agreed that Derr demonstrated that certain spots did not meet the requirements but found that he failed to prove that this was an indication that the road was not wide enough along a sufficient number of places to constitute a material breach of the contract. The superior court also found that Derr failed to provide estimates of the cost of widening the road to 24 feet in the deficient spots. Neither of the estimates Derr provided gave a specific estimate for making the road sufficiently wide. Kennerson's estimate did not even mention road width. Northern Dame's estimate only assessed the cost of road width in combination with all its other estimated costs of work on Foothills Boulevard. This lack of both a specific estimate of cost and the extent of the

27. The superior court determined that Tew was responsible for some of the culvert cover deficiencies, unrelated to the three inch minus gravel, on the private driveway off of Foothills Boulevard and assessed $800 in damages to Derr to cure the deficiencies.

28. *Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 636 (Alaska 1996).

29. *Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 154–55 (Alaska 1992) (quoting *Dowling Supply & Equip., Inc. v. City of Anchorage*, 490 P.2d 907, 909 (Alaska 1971)).

30. *Breck v. Moore*, 910 P.2d 599, 606 (Alaska 1996).

road width deficiencies left the superior court with no basis for assessing damages. The superior court's determination not to award damages for road width deficiencies because of a failure of proof was not an abuse of discretion.

### I. The Superior Court Did Not Err In Finding No Breach Of Contract By Tew's Failure To Meet The September 30, 2006 Deadline.

The contract specified that "[a]ll work shall be completed by September 30, 2006, weather permitting and gravel source." Tew did not complete the work until October 26, 2006. The superior court found that the delay in completion was the result of weather and gravel source and thus was not a breach of the contract.

Derr argues that the superior court erred in finding that the completion deadline was waived. The superior court did not actually find waiver of the September 30, 2006 deadline. The superior court instead found Derr did not demonstrate an actionable breach of the September 30, 2006 deadline. The contract specifically anticipated potential delay in meeting the deadline by providing that the deadline was dependent on "gravel source and weather permitting." This provision is not ambiguous. The superior court found some delay occurred due to weather. The court found greater delay occurred due to the need to process the gravel. The court also found that some delay occurred when Tew was grubbing and clearing because Derr was unavailable to do the work himself as he originally intended. The potential for delay was provided for in the contract, and the superior court's finding that delay in meeting the deadline was justified under this provision is supported by the record. The superior court's findings are not clearly erroneous.

### J. The Superior Court Did Not Rely On Theories Of Estoppel Or Waiver In Not Awarding Damages To Derr.

Derr claims the superior court may have relied on theories of waiver or estoppel in finding that Derr was not entitled to dam-

ages for the failure of performance regarding three inch minus gravel, the cul-de-sac, slope angles and coverings, or the 24-foot road width. Derr may be referring to the superior court's statement that "the occasional failure to meet this requirement [that the road be 24 feet wide] never was complained of by Derr to Tew." But in context, it is clear that the superior court did not base its decision not to award damages on theories of waiver or estoppel. The superior court explained:

> Derr proved that Tew did fail to fully meet the 24 feet requirements, at least at several points in each of the roads as credibly measured by Derr. Derr did not prove with sufficient certainty any precise number of such places, though, or what a reasonable cost to repair the width problem would have been at the time.... Moreover, the occasional failure to meet this requirement never was complained of by Derr to Tew.... Derr also has not shown by [a] preponderance of the evidence the number of length of road feet where the width of 24 feet was not achieved, nor how much it would have cost in the fall of 2006 to fix each linear foot.

Thus, the superior court did not mention or discuss waiver or estoppel, but in context explained that its reason for not awarding damages was because Derr failed to prove them. We conclude the superior court did not erroneously rely on theories of waiver or estoppel.

### K. The Superior Court Did Not Abuse Its Discretion By Considering Derr's Duty To Notify And Provide An Opportunity For Cure After The Evidence Had Closed.

During closing arguments the superior court requested supplemental briefing from both parties on whether Derr had a duty to give Tew notice and opportunity to cure. Derr argues that this was an abuse of discretion.

We have recognized that Alaska courts have " 'inherent discretionary authority' to decide a case on a legal theory not presented in the pleadings."[31] We have acknowledged

---

**31.** *Alaska Prot. Servs., Inc. v. Frontier Colorcable,* *Inc.,* 680 P.2d 1119, 1124 (Alaska 1984) (quoting

that the power should be "sparingly exercised. In particular it should only be used when the new theory applies to the transaction in issue, is related to the theories presented by the parties, and is necessary for a proper and just disposition of the case."[32] In *First National Bank* we determined that the superior court had the authority to examine a new legal theory but erred in "failing to give the parties notice that it would do so along with an opportunity to adjust their cases accordingly."[33]

 In addition "we have held that when both parties address the substantive merits of an issue at trial, the parties have impliedly consented to try it."[34] "Although mere failure to object to the introduction of evidence potentially relating to a new claim does not amount to implied consent to try that claim,"[35] directly questioning, presenting evidence, not objecting, and testifying on the matter all support a conclusion of implied consent.[36]

The issues of notice and cure were tied to Derr's theory of the case through the doctrine of good faith and fair dealing.[37] In addition, "[t]he duty to mitigate damages is a well-recognized rule of contract law in Alaska."[38] Derr was aware of the notice and duty to mitigate issues. Attorneys for both parties questioned Derr and Tew about providing notice of incomplete work. Derr's attorney addressed the issue of mitigation during his cross-examination of Tew. The parties were given the opportunity to submit post-trial briefing on these issues. Derr never requested that the superior court reopen the case to take further evidence on either issue. Tew requested that the superior court amend his answer to include failure to miti-

gate in accordance with the evidence presented at trial.[39] Under these circumstances it is clear that the parties addressed the substantive merits of mitigation and damages and notice (or lack thereof) to Tew regarding Derr's allegations of deficient work, and the parties were given an opportunity to brief the legal significance of this evidence. The superior court properly used its inherent discretionary authority to order supplemental briefing.

## L. The Superior Court Did Not Err In Finding That Derr Had An Obligation To Provide Tew With Notice And An Opportunity To Cure.

 The superior court discussed notice and the opportunity to cure in the context of Derr's claim that Tew failed to construct the road to a uniform 24–foot width. The court's discussion of the failure of notice and opportunity to cure followed its related discussion concerning Derr's failure to mitigate his damages regarding the three inch minus gravel issue. In context, the court's findings and conclusions on these related issues focused on Derr's failures to take reasonable steps to "fix" or mitigate his damages, and to permit Tew to "fix" or cure the minor incomplete items remaining on the punch list when they could have been resolved at relatively low cost to Derr, or at Tew's cost. Discussed above, the court found that Tew had substantially complied with his contractual obligations in constructing the road. The superior court explained:

Derr acted in bad faith in failing to mitigate his damages. The opportunity to pay Northern [Dame] to provide and use

---

*State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 422 (Alaska 1982)).

32. *Id.* (quoting *First Nat'l Bank*, 660 P.2d at 423).

33. *First Nat'l Bank*, 660 P.2d at 423.

34. *Asher v. Alkan Shelter, LLC*, 212 P.3d 772, 779 (Alaska 2009) (citing *Oaksmith v. Brusich*, 774 P.2d 191, 199 (Alaska 1989)).

35. *Id.* (citing *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1015–16 (Alaska 1999)).

36. *Id.*

37. *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979).

38. *Alaska Children's Servs., Inc. v. Smart*, 677 P.2d 899 (Alaska 1984) (citing *Anchorage Indep. School Dist. v. Stephens*, 370 P.2d 531, 533 (Alaska 1962)).

39. The request to amend pleadings was made in the conclusion of Tew's reply brief on the issue of notice and opportunity to cure. The superior court did not rule on the request for an amendment of the pleadings.

screened gravel, and the relatively small amount of money asked for by Steppers to screen the gravel while Tew still was on the job both were ignored. The minimal "fixes" his own engineer, Whaley, told him were necessary in February 2007 . . . also went ignored. During these periods of time, Derr had not yet paid Tew the final $50,000, so Derr should have had this much money to use to mitigate his damages if in fact he had been damaged by Tew.

＊　　＊　　＊

[Derr] has not proved [Tew] breached the contract except as to the required 24 foot road widths and perhaps in one instance the required 22 foot road width on Foothills. [Derr] has not proven his damages to any degree of certainty as to any such breach, however. Also, [Derr] accepted this breach until it was too late. Moreover, [Derr] did not give [Tew] any reasonable opportunity to cure any such breach at [Tew's] own expense. [Derr] therefore is not entitled to any recovery from [Tew] for this claimed deficiency.

In accordance with the substantial performance doctrine, Tew should pay Derr the following to cure the deficiencies left from when Tew achieved substantial completion by working down to the last minute of the season:

1. $800 for the culvert deficiencies . . . ,

2. $5,000 for the cost of the slope cover deficiencies . . . that were Tew's responsibility to cure, and

3. $5,000 for the angle deficiencies.

No greater sum than $10,800 for these deficiencies was proved with reasonable certainty.

Thus, the superior court awarded damages to Derr under the substantial performance doctrine, in part based on Derr's failure to provide Tew notice and an opportunity to cure.

Derr argues that no obligation exists under the duty of good faith and fair dealing or under the obligation to mitigate damages that required him to provide Tew with notice of or an opportunity to cure deficiencies in the work. Derr argues that the superior court misapplied *Davis v. McCall* because the court in that case found that the contractors had notice of the defects.[40] But in *Davis* we never stated that there was no duty to provide notice or an opportunity to cure. We held that the McCalls provided adequate notice of the deficiencies and that it was not necessary to provide "notice of every one of the twenty-four separate defects." [41] *Davis* also does not stand for the proposition that an opportunity to cure is unnecessary. We held that after an initial opportunity to cure there was no need for "additional opportunities to make repairs." [42] But the initial opportunity to cure still existed. A party in Derr's position who believes that a contractor has not properly completed his contractual obligations acts at his peril if he fails to give the contractor timely notice of the perceived deficiencies and a reasonable opportunity to cure the deficiencies.

It is not disputed that Derr did not provide Tew with notice of the deficiencies. Even after the two Borough inspections, Tew was not provided notice of the deficiencies or the opportunity to cure. Tew was not provided the punch list or copies of the correspondence with the inspectors. He was never provided an opportunity to fix the minor items identified on the punch list.

The superior court determined that Tew had substantially complied with his contractual obligations, but that in three relatively minor respects Tew had left several deficiencies for which he must pay Derr damages. The superior court's findings are not clearly erroneous and it did not err in considering Derr's failure to provide notice and an opportunity to cure in assessing what damages Tew was responsible for paying.

**M. Derr's Claim To Incidental Costs For Removing The Lien Recorded By Tew Was Waived Because Derr Failed To Raise The Claim In The Superior Court.**

Derr also claims that he is entitled to recover $3,000 in incidental costs he in-

**40.** 568 P.2d 956, 958 (Alaska 1977).

**41.** *Id.*

**42.** *Id.*

curred in removing the lien recorded by Tew. This claim for damages by Derr on appeal was not made in the superior court and will not be considered on appeal.[43]

 Even if we were to consider Derr's argument, it is without merit. The superior court found Tew did not act in bad faith by filing a lien. The superior court also found that Derr had problems accepting or paying bills to Tew. Derr's failure to pay left Tew with few options. Tew was statutorily required to file the lien within 120 days of finishing work on the project or the lien would not be enforceable.[44] We have strictly construed statutory lien deadlines.[45] Tew's lien was filed in a timely manner. Tew took the legally required steps in obtaining the lien and Derr is not entitled to recover the incidental costs of removing it.

## V. CONCLUSION

We AFFIRM the findings and judgment of the superior court in every respect.

CHRISTEN, Justice, not participating.

**43.** *Brandon v. Corrs. Corp. of America*, 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal.").

**44.** AS 34.35.068(c).

**45.** *See, e.g., Frontier Rock & Sand, Inc. v. Heritage Ventures, Inc.*, 607 P.2d 364, 367 (Alaska 1980); *H.A.M.S. Co. v. Elec. Contractors of Alaska, Inc.*, 563 P.2d 258, 262–64 (Alaska 1977).