**TUFCO, INC., Appellant,**

v.

**PACIFIC ENVIRONMENTAL CORPORATION,**
Appellee.

No. S–11132.

Supreme Court of Alaska.

June 3, 2005.

---

Samuel W. Cason, Anchorage, for Appellant.

David M. Freeman, Holmes Weddle & Barcott, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

Tufco, Inc., leased property to Pacific Environmental Corporation (Penco) for use in a business that cleans up environmental contamination. As part of the agreement, Tufco's owner, Todd Fisher, worked as a Penco employee. In the course of his employment, Fisher helped arrange, and then actively participated in, cleanup work that required storing hazardous materials on Tufco's property. Later, acting on behalf of Tufco, Fisher sued to evict Penco, claiming that it had breached a lease provision that prohibited storing hazardous materials on Tufco's property. The superior court held a trial and concluded that Fisher's conduct estopped Tufco from enforcing the hazardous-materials provision. Tufco then moved to amend its complaint to include a new claim—an allegation that the lease had recently been modified—that Tufco contended the parties had actually tried; the court denied this motion, finding that the new issue had neither been raised nor tried. In entering judgment, the court awarded Penco the full reasonable fees and costs it incurred from the time it received Tufco's notice of default, basing this ruling on a lease provision that allowed recovery of prevailing-party costs and attorney's fees. Tufco challenges these rulings. We affirm, concluding that the record supports the superior court's finding of estoppel, that the court properly declined to amend the complaint to include Tufco's post-trial issue because the issue had not actually been tried, and that the court correctly interpreted and applied the lease's provision allowing prevailing-party costs and fees.

## II. FACTS AND PROCEEDINGS

Todd Fisher owned Jesco, an Alaska company that specialized in tank inspections and tank cleanings. Jesco had recently purchased a building in Anchorage when Penco, a Hawaii-based corporation doing similar work, approached Fisher about purchasing Jesco. The parties negotiated a lease/purchase agreement. The terms of the agreement called upon Penco to purchase the Jesco business for a sum of $400,000 and a share

of the business's ongoing profits; in addition, Penco would lease Jesco's Anchorage building and property from Fisher for a renewable five-year term. The agreement also required Penco to employ Fisher and one of Jesco's existing Anchorage employees, George Shedlock, as Penco's Alaska representatives. To carry out the agreement, Fisher formed a new company, Tufco, which acquired Jesco's assets, sold the Jesco business to Penco, and acted as the lessor of the Anchorage building and property.

Jesco and Penco signed the sale and lease agreements in March 1999. The building lease contained a provision prohibiting Penco from storing hazardous materials on Tufco's premises. It also included a provision that entitled either party to recover prevailing-party costs and attorney's fees if the party needed to retain counsel to enforce its rights under the lease.

In late summer, Penco negotiated a contract with a company called Envirosolve that gave Penco ongoing responsibility for recovering and storing hazardous chemicals seized by various law enforcement agencies during raids on illicit methamphetamine laboratories in Alaska. Penco designated Fisher and Shedlock to lead teams of Penco employees in the hazardous-materials recovery operations. The contract required Penco employees to go through extensive training on handling hazardous materials and to be fingerprinted by government agencies. It also required Penco to build a storage facility for the hazardous materials on its Anchorage property and to secure the storage facility with an alarm and razor-wire fencing.

In September or October 2002 Envirosolve conducted a seminar for Penco employees to demonstrate the procedures involved in carrying out the contract. Fisher participated in the seminar. Soon after, Fisher began acquiring the equipment needed for Penco to build the new secure-storage facility. The equipment included a connex storage trailer—which Fisher purchased from a company owned by his wife—and razor wire for the fence surrounding the trailer. Once the connex trailer was placed on Tufco's Anchorage property, Fisher spent several nights and weekends installing the razor-wire fence around the trailer.

In November Fisher participated in Penco's first meth-lab cleanup job, storing the hazardous materials in the trailer on Tufco's property. Later the same month, acting on behalf of Tufco, Fisher sent Penco a notice of default, claiming that it had breached the lease agreement's hazardous-materials provision by storing hazardous materials on Tufco's property. Penco responded with a letter denying this claim, asserting that Fisher had effectively consented to the use of Tufco's property for storage of hazardous materials by helping Penco secure the Envirosolve contract and by preparing the site for storage of hazardous materials. In reply, Tufco notified Penco that its breach of the hazardous-materials provision had terminated the lease but that Tufco would be willing to allow Penco to remain on the premises for a higher rent. Over the next several months the parties discussed ways to resolve this conflict, including the possibility of a new lease agreement expressly allowing Penco to store the Envirosolve materials on Tufco's property. Meanwhile, Penco continued to recover hazardous materials from meth labs and store them on Tufco's property; and Fisher continued to participate in this work.

The parties' settlement efforts ultimately proved unsuccessful. In May 2003 Tufco filed an action to evict Penco from the property and for damages resulting from its breach of the lease. At Tufco's request, the superior court held an expedited trial; Fisher and Shedlock testified for Tufco, and four Penco officers testified for Penco. The superior court ruled in favor of Penco, finding that Tufco was estopped from invoking the hazardous-materials provision because, by helping Penco obtain the Envirosolve contract, purchasing materials, and building the secure storage facility, Fisher had effectively led Penco to believe that he had approved Penco's storage of these hazardous materials on Tufco's property.[1]

---

1. The court also found that Tufco impliedly waived the hazardous-materials provision in the lease. Our decision on the issue of estoppel makes it unnecessary to address the court's alternative ruling on waiver.

Tufco moved for reconsideration, insisting that Fisher's conduct was not inconsistent with enforcing the lease, because he had merely acted as a Penco employee and had adequately communicated his opposition to Penco's hazardous-materials storage by discussing the issue with Shedlock, who was then working as Penco's Alaska area manager. Tufco separately moved under Alaska Civil Rule 15(b) for leave to amend its pleadings to conform to the evidence presented at trial. Tufco asserted that during the parties' settlement discussions before trial, Penco had agreed, as a condition of remaining on the property, to purchase insurance covering pollution damage; in Tufco's view, this agreement amounted to a modification of the original lease. Tufco insisted that the parties had actually litigated the lease-modification issue at trial, so it requested that its complaint be amended to conform to the issues actually tried by adding an allegation of lease modification and a claim for declaration of the parties' obligations under the modified lease. At the same time, in its motion for reconsideration, Tufco asked the court to enter additional findings determining whether the lease had been modified and whether Penco would be obligated to maintain its coverage if it continued to occupy Tufco's premises under the lease.

The superior court denied Tufco's motions and declined to address the lease-modification issue, concluding that Penco did not have notice of Tufco's intent to try this issue and that the issue had not actually been tried. Because the superior court's ruling on eviction disposed of all issues raised in Tufco's complaint, the court entered judgment dismissing Tufco's action with prejudice. In keeping with the lease's provision on prevailing-party costs and fees, the judgment included an award to Penco of the full attor-

ney's fees and costs it incurred after Tufco's initial notice of default.

Tufco appeals.

## III. DISCUSSION

### A. Standard of Review

■ We review the superior court's factual findings on estoppel under the clearly erroneous standard.[2] A finding of fact is clearly erroneous when our review of the entire record leaves us "with a definite and firm conviction that . . . a mistake has been made, even though there may be some evidence to support the finding."[3] We review a trial court's rulings on motions to amend the pleadings and on awards of attorney's fees for abuse of discretion.[4] The trial court abuses its discretion when its decision is arbitrary, capricious, or manifestly unreasonable.[5]

### B. Sufficiency of Evidence on Estoppel

The superior court found that Tufco was equitably estopped from enforcing the lease's hazardous-materials provision against Penco because Fisher "spearheaded th[e] endeavor" to obtain the Envirosolve contract. It found that Fisher's actions had amounted to an assertion that Tufco did not object to hazardous-materials storage on its property, that Penco detrimentally relied on this assertion, and that Fisher's subsequent claim of breach was "unconscionable." Tufco argues that the record does not support the court's finding of estoppel.

■ A party claiming equitable estoppel must prove four elements: (1) an assertion of a position by word or conduct; (2) reasonable reliance on the assertion; (3) resulting prejudice; and (4) the estoppel will be enforced only to the extent that justice requires.[6] Only the first two elements are disputed here.

---

2. *Hubbard v. Hubbard,* 44 P.3d 153, 155 (Alaska 2002).

3. *Barrett v. Alguire,* 35 P.3d 1, 5 (Alaska 2001) (quoting *Jenkins v. Handel,* 10 P.3d 586, 589 (Alaska 2000).)

4. *Betz v. Chena Hot Springs Group,* 742 P.2d 1346, 1348 (Alaska 1987) (motions to amend

pleadings); *Tenala, Ltd. v. Fowler,* 993 P.2d 447, 449 (Alaska 1999) (attorney's fees awards).

5. *Tenala, Ltd.,* 993 P.2d at 449.

6. *Ogar v. City of Haines,* 51 P.3d 333, 335 (Alaska 2002); *Municipality of Anchorage v. Schneider,* 685 P.2d 94, 97 (Alaska 1984).

Tufco argues that Fisher did nothing that could be construed as an assertion that Tufco would not enforce the lease provision regarding hazardous-materials storage. Tufco insists that Fisher's conduct in securing, implementing, and performing the Envirosolve contract cannot reasonably be viewed as an assertion of approval by Tufco, since, in Tufco's view, Fisher was merely doing his job as a Penco employee. Moreover, Tufco argues, Penco could not have reasonably relied on any implied approval given by Fisher, because Fisher notified Penco through conversations with Shedlock that Tufco intended to enforce the hazardous-materials provision.

Penco responds that not only did Fisher's actions reflect his acquiescence in the breach, they actually caused the breach. Furthermore, Penco insists, even if Fisher discussed his concerns with Shedlock, this conversation did not put Penco officials on notice of Tufco's intent to enforce the hazardous-materials provision, since the lease expressly required Fisher to give Penco's Hawaii office written notice of any concerns about Penco's compliance.

The superior court agreed with Penco, finding that Fisher's actions completely contradicted any conversations that Fisher might have had with Shedlock, that Fisher's and Shedlock's testimony was not believable, and that Fisher took no steps reasonably likely to inform Penco that hazardous materials recovered under the Envirosolve contract could not be stored on Tufco's property.

The question at issue, then, is whether the record supports these findings. We hold that it does. The record shows that Tufco, through Fisher, actively helped Penco secure the Envirosolve contract. Fisher participated in a training session put on by Envirosolve to demonstrate the process for recovering and storing hazardous materials seized at the meth labs. After this training session, Fisher spent several nights and weekends putting up special razor-wire fencing around Tufco's premises as required by the contract with Envirosolve. Fisher also purchased the connex container for storing the hazardous materials on Tufco's property. And there is evidence that Fisher was in charge of Penco's employees in meth-lab cleanups during the winter; Fisher acknowledged that he shared this leadership responsibility with Shedlock, who was in charge of the cleanups during the summer.

■ In essence, then, Fisher worked extensively to ensure not only that Penco received the Envirosolve contract but also that Penco would be able to store the hazardous materials on Tufco's property, as the contract required. Fisher actively participated in Penco's first cleanup and helped store the materials on Tufco's property—all before notifying Penco of the breach. Both individually and collectively, these actions could reasonably be construed as an implicit assertion that Tufco would not enforce the hazardous-materials provision of the lease as to materials stored in connection with the Envirosolve contract.

Tufco nonetheless argues that Fisher's communications with Shedlock barred Penco from claiming that it reasonably relied on his actions. Although Penco does not dispute that the alleged conversations between Fisher and Shedlock occurred, it argues instead that they could not have provided notice of Tufco's position, because the lease expressly stated that if Tufco had complaints about Penco's lease compliance, the complaints would have to be submitted in writing to Penco's Hawaii office. At trial, Fisher expressly conceded that, despite being aware of the lease's written-notice requirement, and even though he had the opportunity to comply with this requirement, he never relayed any of his concerns to Penco's Hawaii office.

Because the record contains ample evidence supporting the superior court's findings concerning Fisher's implied assertions that Tufco would not enforce the hazardous-materials provision and Penco's reasonable reliance on those assertions, we hold that the court did not clearly err in estopping Tufco from enforcing the provision.

## C. Denial of Tufco's Request To Amend Its Complaint

After the superior court ruled against Tufco on its claims for eviction and damages, Tufco moved to amend its complaint under Civil Rule 15(b) to conform to the evidence

presented at trial. As we have already described above, Tufco claimed that the parties had litigated the issue of a pretrial lease modification that, in Tufco's view, required Penco to purchase insurance protecting the Anchorage property against damages caused by pollution. Tufco sought to have its complaint amended to reflect this claim. At the same time, it asked the court to reconsider its original findings by entering additional findings resolving this claim. The superior court denied Tufco's motions, finding that the lease-modification issue had neither been litigated nor raised. Tufco challenges this ruling.

Civil Rule 15(b) allows a party to amend its original pleadings to include issues that the parties either expressly or impliedly litigated at trial:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.[7]

We have interpreted this rule to apply when evidence supporting the post-trial amendment was admitted at trial by consent of the parties or with the court's approval despite the opposing party's objection that the evidence addressed issues outside the pleadings.[8] Here, Tufco's original complaint alleged that Penco had breached the lease and, based on this allegation, set out claims for eviction and damages. The complaint did not allege that the lease had been modified or seek a declaration of the parties' obligations under the modified lease.

During the course of the parties' pretrial discussions to resolve their dispute, Penco indicated that it would purchase an insurance policy for Tufco's premises effective May 2003 if Tufco allowed it to remain on the premises. Although Penco's agreement to purchase insurance was mentioned at trial, the record fails to support Tufco's contention that the issue of lease-modification was litigated by express consent of the parties. To the contrary, when Tufco's counsel asked a witness whether Penco had provided Tufco with a certificate of insurance, Penco's attorney objected, insisting that "there is no issue that [Tufco] indicated with regard to this hearing involving the ... procurement or failure to procure insurance. It's not part of the complaint." In response to this objection, the trial court observed that it might be "more trouble than it's worth to discuss the matter." Tufco's attorney then simply indicated that he would "move on."

Nor does the record support Tufco's contention that the lease-modification issue was tried with the parties' implied consent. "Implied consent ... is ... difficult to establish and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. If they do not, there is no consent and the amendment cannot be allowed."[9] Tufco notes that Penco introduced its new insurance policy as an exhibit at trial. But as Penco correctly points out, the record indicates that Penco introduced the exhibit together with other transactional documents for a limited reason: to present a complete picture of the parties' pretrial transactions so as to avoid any implication that Penco might have admitted Tufco's allegations of breach. The record provides no indication that either party went further by seeking to litigate the substantive issue of whether Penco's agreement to purchase insurance was intended to prospectively modify the parties' original lease. Clifford Dart, Penco's Chief Financial Officer and Vice President, testified that Penco obtained the insurance in the course of discussing a possible settlement only to satisfy Tufco's demands that Penco immediately buy the insurance. Tufco's attorney did not pursue the issue further, and the court admitted the policy as a trial exhibit without objection or

---

7. Alaska R. Civ. P. 15(b).

8. *Alderman v. Iditarod Properties,* 32 P.3d 373, 396 (Alaska 2001).

9. 6A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1493 (2d ed.1990).

additional explanation. Notably, during its closing arguments, Tufco did not contend that the lease had been modified; to the contrary, it expressly acknowledged that waiver and estoppel were "the only issue[s before the court]."

■ Because the record provides abundant support for the superior court's finding that the issue of lease modification was not actually litigated, its denial of Tufco's motion to amend under Rule 15(b) cannot fairly be characterized as arbitrary, capricious, or manifestly unreasonable. It follows that the superior court did not abuse its discretion in denying the motion.

### D. Award of Full Attorney's Fees and Costs

The lease in this case gave either party the right to recover prevailing-party attorney's fees and costs "any time" the party needed to hire counsel to enforce "its rights under the terms of th[e] agreement." Relying on this provision, the superior court awarded Penco the full attorney's fees and costs it incurred after Tufco sent Penco the original notice of default.[10] Tufco separately challenges the amounts awarded for fees and for costs.

#### 1. Attorney's fees

In challenging the award of attorney's fees, Tufco does not dispute that the lease allowed recovery of full reasonable fees rather than the limited fees set out under Civil Rule 82. But Tufco contends that some of the attorney's fees awarded reflected charges for matters beyond the scope of the action at issue. In Tufco's view, the superior court should only have awarded fees for charges incurred in defending against Tufco's complaint for eviction.[11]

Penco responds that Tufco's reading of the lease is unduly narrow; because it was "pursuing the enforcement of its rights under the terms of the lease," Penco argues, it was entitled to recover the fees it reasonably incurred in response to Tufco's notice of default, before Tufco actually filed its complaint for eviction.

■ We have previously recognized that a prevailing party may recover its full reasonable attorney's fees when a contract provides for prevailing-party fees.[12] In *Ursin Seafoods, Inc. v. Keener Packing Co., Inc.*, for instance, we held that a contract provision allowing a prevailing party to recover its reasonable attorney's fees trumped Civil Rule 82's provision for partial fees because the parties specifically contracted for the full-fee provision.[13]

Here Tufco sent Penco a notice in November 2002 accusing Penco of breaching the lease by storing hazardous materials on Tufco's property. After its initial discussions with Tufco failed, Penco hired counsel in January 2003 to assist in enforcing its rights under the lease. Penco's counsel responded to Tufco's notice of default on January 22, 2003. On February 4, 2003, Tufco's attorney notified Penco that Tufco had terminated Penco's lease as of January 31, 2003, but was willing to agree to a new lease. Over the next four months, the parties' counsel continued to discuss the lease but ultimately failed to settle the dispute. Tufco then filed its eviction action on May 2, 2003.

■ The superior court found that the parties should reasonably have understood the lease's fees-and-costs provision to cover all attorney's fees incurred in enforcing their rights under the contract, not just the fees incurred after a complaint was actually filed. This decision finds strong support in the text

---

**10.** Paragraph 28 of the lease between Tufco and Penco provides in relevant part:

> If, at any time, either party shall employ counsel in connection with the enforcement of its rights under the terms of this agreement, the prevailing party shall be entitled to recover attorneys' fees and costs incurred with respect to pursuing such rights.

**11.** In addition, Tufco complains that some of the fees were incurred by Penco in re-negotiating

Fisher's employment contract; but as Penco correctly points out, the superior court reduced the award of attorney's fees by deleting charges incurred in negotiating Fisher's employment contract.

**12.** *See Jackson v. Barbero*, 776 P.2d 786 (Alaska 1989); *see also Gamble v. Northstore P'ship*, 28 P.3d 286, 288 (Alaska 2001).

**13.** 741 P.2d 1175, 1180–81 (Alaska 1987).

of the lease, which allows recovery of fees "any time" a prevailing party has hired counsel to enforce "its rights under the terms of this agreement." Even Tufco appears to have read the provision this way: Tufco's pre-complaint letter notifying Penco that it had terminated the lease referred to the fees provision and demanded that Penco pay $1,400 in fees and costs that Tufco had spent in preparing its notice of default. Given these circumstances, we hold that the superior court did not err in interpreting the lease to cover costs and fees reasonably incurred before the eviction action was formally filed and that the court did not abuse its discretion in awarding Penco its full reasonable attorney's fees from the date of Tufco's notice of default.

### 2. Costs

Tufco separately challenges the superior court's award of costs, arguing that the award should have been limited to costs allowed under Civil Rule 79(f). Penco responds that the costs provision in the lease agreement is not limited by Rule 79(f), just as the attorney's fees provision was not limited by Rule 82.

We agree. The lease provided that the "prevailing party shall be entitled to recover attorneys' fees *and costs incurred*" in enforcing its rights. (Emphasis added.) As we concluded above, the superior court correctly awarded Penco its full attorney's fees even though Civil Rule 82 ordinarily allows prevailing parties to be awarded only partial fees and even though Penco incurred some of its fees before Tufco filed its eviction action. We reach a similar conclusion as to costs. The language of the lease does not limit prevailing-party costs to those awardable under Civil Rule 79 or to costs incurred after a formal action has been filed.

To be sure, the lease requires that incurred costs be reasonable; yet the record discloses nothing unreasonable in the costs actually awarded. The superior court awarded Penco its costs for obtaining an expedited transcript of the first day of trial and for copying documents at a rate modestly exceeding the one allowed under Rule 79. But Penco's transcript costs appear justified by the expedited nature of Tufco's eviction action. And the fact that Penco's copying costs exceeded the amount allowed under Rule 79(f) hardly compels the conclusion that those costs were excessive. Having reviewed the record, we cannot say that the superior court's decision to award these costs was arbitrary, capricious, or manifestly unreasonable. We conclude that the superior court did not abuse its discretion in awarding Penco its full costs.

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's decision.