*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RONALD M. BURTON, | ) | |
| | ) | Supreme Court No. S-15990 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-12-01642 CI |
| v. | ) | |
| | ) | O P I N I O N |
| FOUNTAINHEAD DEVELOPMENT, | ) | |
| INC., | ) | No. 7158 – March 17, 2017 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Jane F. Kauvar, Judge.

Appearances: James M. Hackett, Law Office of James M. Hackett, Fairbanks, for Appellant. David H. Bundy, David H. Bundy, P.C., Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A tour company hired an employee to work the tourist season as one of its representatives at a Fairbanks hotel where he had worked seasonally in the past. During training, hotel management recalled that the employee had been difficult to work with. They told the tour company they did not want him working at their hotel and, in explaining their decision, made several unfounded statements about him. When the tour

company was unable to place the employee at a different hotel because of his limited transportation, it terminated his employment.

The employee sued the hotel for defamation and for tortious interference with his prospective business relationship with his employer. Following a bench trial the superior court rejected the tortious interference claim based on lack of causation but found that several of the hotel's statements were defamatory per se, justifying an award of general damages but not special or punitive damages. The court also denied the employee's motion to amend his complaint to add a new defamation claim based on events that arose mid-trial. The employee appeals.

We conclude that: (1) the superior court did not abuse its discretion in denying the employee's post-trial motion to amend his complaint; (2) the court did not clearly err in its application of a conditional business privilege or in its finding that the defamation did not cause the employee's damages; and (3) the court did not clearly err in its award of damages. We therefore affirm the judgment of the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Princess Tours hired Ronald Burton to work the 2011 tourist season as a "guest service host." Guest service hosts are stationed at hotels where Princess houses its tour groups; they help hotel employees greet and serve the large numbers of Princess guests as they arrive and require various services. Burton was hired to work primarily at Bear Lodge, owned by Fountainhead Development, Inc., because it was within walking distance of his home and he lacked alternative transportation; however, he also agreed to work as needed at other Princess-affiliated hotels in Fairbanks. Burton had worked seasonally for Princess Tours before, from 1999 to 2004, and at Bear Lodge from 2000 to 2003.

Burton completed several weeks of training in the spring of 2011, including a visit to Bear Lodge. There, in the presence of his Princess supervisor, Jonathan Bradish, and a Fountainhead manager, Stuart Campbell, Burton criticized the traffic flow in the hotel's parking lot. Campbell relayed the criticism to Fountainhead's general manager, Shane Arnold, who passed it on to the personnel and operations manager, Kathleen Lanning. The criticism reminded the management team of other complaints Burton had made while working on Fountainhead's property years before. Lanning and Timothy Cerny, Fountainhead's president, decided they did not want Burton as a guest service host at Bear Lodge, and they asked Arnold to speak to Princess about their decision.

Arnold told Bradish of Fountainhead's decision on May 13. The two men later recalled the conversation differently, but the superior court found that Arnold told Bradish that Burton was "not allowed" on Fountainhead's property. When Bradish asked why, Arnold said that Burton had once been involved in an altercation with a guest and that he had "defaced" Fountainhead property.[1]

Burton was scheduled to begin work at a different hotel on May 16. Bradish pulled Burton from the schedule and told him about Fountainhead's allegations. Burton denied them, and Bradish granted him a "grace period" to sort things out with Fountainhead. Over the next several days Burton exchanged emails and phone calls with Lanning, and on May 24 she sent him a letter "to recap [a] phone conversation of last week." According to the letter, Burton was not "banned" from Fountainhead's property;

---

[1] Bradish's testimony implies that the "defacing property" comment may have had to do with damage to the Fountainhead "brand's image" rather than physical property, though it is not entirely clear. Bradish testified that Arnold was hesitant to "go into it" and that the "defacing property" comment could have been taken "multiple ways."

he was welcome there "anytime as a guest," but he would not be welcome as an employee. Fountainhead's decision was based on its impression that Burton was "never happy with [the hotel's] policies and procedures" when working there in the past. Lanning also mentioned a different incident when Burton "had not been supportive of a management decision while in the presence of guests," though she had heard the story second-hand and lacked any other details. Lanning's letter concluded that employing Burton at Bear Lodge would not be "in the best interest of [Fountainhead] or that of Princess's guests."

On May 28 Burton emailed Bradish, reminding him that he could not easily "work at any other location than Bear Lodge except on rare occasions" because of his transportation issues. Anticipating that this meant the end of his Princess employment, he asked "that any action for [his] separation from employment be in writing and address the cause." Bradish emailed back, confirming that Princess had hired Burton "hoping to place [him] at Bear Lodge" and that it could "no longer have [him] on [its] team [due] to schedule parameters." Princess documented Burton's termination internally with a note that said he "[w]as banned from Fountainhead Properties by their management, which meant he couldn't work where we wanted him to." Princess also marked Burton as ineligible for rehire.

## B.    Proceedings

In May 2012 Burton filed a complaint against Fountainhead alleging two causes of action: (1) tortious interference with a prospective business relationship, for causing Princess to terminate his employment; and (2) defamation based on Arnold's statements to Bradish about "Burton's past performance as a [Fountainhead] employee." Fountainhead raised defenses of truth and privilege, among others. The superior court

held a bench trial over three days in December 2014, then scheduled closing arguments for February 2015.

Before closing arguments, Burton moved pursuant to Alaska Civil Rule 15(b) to amend his complaint to add an additional defamation claim based on conduct that "occurred . . . during the course of the court trial." The court had suggested mid-trial that Fountainhead talk to Princess and attempt to correct any misimpression Princess might have about why Burton was barred from working at Bear Lodge. That evening Fountainhead wrote a letter to Princess asking the company to correct the "termination paperwork" in Burton's personnel file to reflect that he "was never 'banned' from [Fountainhead's] properties." To help explain why it had not wanted Burton to work at Bear Lodge, it attached a copy of Lanning's 2011 letter to Burton. Burton's amended complaint alleged that this mid-trial correspondence was a separate publication and libel that caused him additional harm and entitled him to additional damages. Fountainhead did not oppose Burton's motion to amend, and it filed an answer to the amended complaint.

In February 2015, while hearing the parties' closing arguments, the superior court noted that Burton's motion to amend was not yet ripe for decision. But the court said it would take Fountainhead's mid-trial letter into consideration in crafting any damages award.

A few weeks later the court issued its written decision on the merits. It found against Burton on his claim for tortious interference with a prospective business relationship on the ground that his employment ended because of his "refusal to work at Princess locations besides Bear Lodge," not because of what Fountainhead said about him to Princess. The court concluded that Fountainhead had a "conditional privilege to publish defamatory statements" because of its shared business relationship with Princess,

but that it abused this privilege with two statements to Princess that were defamatory per se: "that [Burton] had an altercation with a guest, and that [Burton] defaced [Fountainhead's] property." The court awarded Burton $15,000 in general damages on the defamation claim but denied special and punitive damages. In a separate written order the court denied Burton's motion to amend his complaint, though it reiterated in its decision that it had taken Fountainhead's mid-trial letter into account "in fashioning [Burton's] award in this case."

Burton requested a new trial or additur, both of which were denied. The court awarded attorney's fees to Fountainhead as the prevailing party because Burton had failed to accept an Alaska Civil Rule 68 offer of judgment in an amount greater than the award of damages.[2]

Burton appeals. He argues that the superior court abused its discretion when it denied his post-trial motion to amend his complaint; that it erred in determining that Fountainhead was privileged to interfere with his employment relationship; that it misstated the legal standard for causation and erred in finding that he failed to prove this element of his tortious interference claims; that it erred in failing to include lost wages and benefits in its award of general damages; and that it erred in failing to award punitive damages.[3]

---

[2]     *See* Alaska R. Civ. P. 68(b) ("If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer, . . . the offeree . . . shall pay [a portion of ] reasonable actual attorney's fees incurred by the offeror from the date the offer was made.").

[3]     Burton also asserts that the superior court "erred and abused its discretion in denying [his] motion for new trial and additur," but he does not expand on this argument. "[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Burts v. Burts*, 266 P.3d 337, 344

(continued...)

## III.   STANDARDS OF REVIEW

We review a trial court's "decision to permit or deny an amendment to the pleadings . . . for abuse of discretion."[4]  Abuse of discretion exists "when the decision on review is manifestly unreasonable."[5]

"In a bench trial, the judge is the trier of fact . . . ."[6]  We review the trial court's factual findings for clear error, as "[i]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[7]  Clear error exists "when 'after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made.' "[8]  "[W]hether the superior court applied the correct legal standard is a question of law to which we apply our independent judgment."[9]

---

[3](...continued)
(Alaska 2011) (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991)).

[4]       *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015) (citing *Miller v. Safeway, Inc.*, 102 P.3d 282, 288 (Alaska 2004)).

[5]       *Id.* (citing *Tufco, Inc. v. Pac. Envtl. Corp.*, 113 P.3d 688, 671 (Alaska 2005)).

[6]       *Wasserman v. Bartholomew*, 38 P.3d 1162, 1166 (Alaska 2002) (citing Alaska R. Civ. P. 52(a)).

[7]       *Lentine v. State*, 282 P.3d 369, 375-76 (Alaska 2012) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[8]       *Laybourn v. City of Wasilla*, 362 P.3d 447, 453 (Alaska 2015) (quoting *3–D & Co. v. Tew's Excavating, Inc.*, 258 P.3d 819, 824 (Alaska 2011)).

[9]       *Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1194 (Alaska 2009) (citing *Landers v. Municipality of Anchorage*, 915 P.2d 614, 616 n.1 (Alaska

We note some inconsistency in how we have formulated our standard of review of a damage award made by a judge sitting as the finder of fact. In *Breck v. Moore* we said that we "review[] an award of damages for an abuse of discretion and independently review[] the law applied by the trial court,"[10] and some later cases relied on *Breck* for this abuse-of-discretion standard.[11] But *Breck* cited only *Johnson v. Alaska State Department of Fish & Game*,[12] which states, consistent with earlier cases, that the applicable standard is clear error except with regard to questions of law:

> "[A] determination of damages by the trial court is a finding of fact which will not be disturbed on appeal unless clearly erroneous." *State v. Guinn*, 555 P.2d 530, 544-45 (Alaska 1976). We have reviewed the record in this case and[] we do not find clear error in any of the superior court's factual findings. However, we do not limit our review of the superior court's damages decision to simply an evidentiary review. "[T]his court will also intervene when the trial court's calculations are in disregard of a rule of law pertaining to damage measures." *Id.* at 545.[13]

---

[9](...continued)
1996)).

[10]     910 P.2d 599, 606 (Alaska 1996) (citing *Johnson v. Alaska State Dep't of Fish & Game*, 836 P.2d 896, 910 (Alaska 1991)) (remanding for redetermination of damages measured by cost of removing plat restriction or diminution in property value caused by restriction, in case involving failure to disclose water and sewage disposal restrictions in real estate sale).

[11]     *See, e.g.*, *3–D & Co.*, 258 P.3d at 829; *State, Commercial Fisheries Entry Comm'n v. Carlson*, 191 P.3d 137, 141 (Alaska 2008); *Fyffe v. Wright*, 93 P.3d 444, 451 (Alaska 2004).

[12]     836 P.2d at 910.

[13]     *Id.*

Notwithstanding *Breck*, we again applied the clear error standard a year later. In *Pluid v. B.K.* we held that "[t]he determination by a trial court sitting as a finder of fact as to the proper amount to be awarded as compensatory damages is not to be disturbed on appeal unless it is clearly erroneous";[14] we went on to say that as long as the trial court "follows the correct rules of law, and [its] estimation appears reasonable and is grounded upon the evidence, [its] finding will remain undisturbed."[15] We applied the same standard in other cases.[16]

Even while applying the clear error standard of review, however, we have recognized that the fact-finder necessarily has some latitude in determining the amount of damages to award. "Certainly in many cases . . . some items of damage cannot be fixed with mathematical precision," and "[i]n those instances the trial judge is necessarily forced to estimate."[17] Reviewing an award of general damages in another defamation case, we observed that "the trier of fact [is permitted] a great deal of latitude in determining the magnitude of . . . damage awards," and "[s]ince proof of damages is not required if words are deemed actionable per se, they clearly cannot be computed with mathematical certainty."[18] We quoted a California case for the proposition that fixing

---

[14]    948 P.2d 981, 983 (Alaska 1997) (citing *Morrison v. State*, 516 P.2d 402, 405 (Alaska 1973)).

[15]    *Id.* (quoting *Morrison*, 516 P.2d at 405).

[16]    *Brandner v. Hudson*, 171 P.3d 83, 86 (Alaska 2007) (citing *Pluid*, 948 P.2d at 983); *Peterson v. Ek*, 93 P.3d 458, 463 (Alaska 2004) (citing *Beaux v. Jacob*, 30 P.3d 90, 97 (Alaska 2001)); *MAPCO Express, Inc. v. Faulk*, 24 P.3d 531, 536 (Alaska 2001) (citing *Pluid*, 948 P.2d at 983).

[17]    *Morrison*, 516 P.2d at 405.

[18]    *Alaska Statebank v. Fairco*, 674 P.2d 288, 295 (Alaska 1983) (citing
(continued...)

"damages [for harm suffered to intangible interests such as reputation] has long been vested in the sound discretion of the trier of fact . . . subject only to the passion and prejudice standard."[19]  In short, a damages award, and particularly a general damages award, will often require the fact-finder to exercise some discretion along an acceptable continuum — unlike, for example, a finding about whether the traffic signal was red or green.

At bottom, however, deciding the amount of compensatory damages is the job of the finder of fact, whether a jury or the judge in a bench trial; as such it is subject to the clear error standard of review.  We do not review jury awards for an abuse of discretion, and we see no reason to review judges' awards differently when judges are performing the same fact-finder role.  We take this opportunity to reaffirm that "[a] trial court's determination of damages is a finding of fact which we affirm unless it is clearly erroneous[, b]ut we apply our independent judgment in deciding whether the trial court's award of damages is based on an erroneous application of law."[20]

---

[18](...continued)
*Eslinger v. Henderson*, 457 P.2d 998, 1000 (N.M. 1969)).

[19]    *Id.* at 295-96 (alterations in original) (quoting *Bertero v. Nat'l Gen. Corp.*, 529 P.2d 608, 624 (Cal. 1974)).

[20]    *Beaux*, 30 P.3d at 97 (citing *Curt's Trucking Co. v. City of Anchorage*, 578 P.2d 975, 977 (Alaska 1978)).  We accordingly disavow inconsistent language in *Breck v. Moore*, 910 P.2d 599, 606 (Alaska 1996);  *Fyffe v. Wright*, 93 P.3d 444, 451 (Alaska 2004);  *State, Commercial Fisheries Entry Commission v. Carlson*, 191 P.3d 137, 141 (Alaska 2008); and *3–D & Co. v. Tew's Excavating, Inc.*, 258 P.3d 819, 829 (Alaska 2011).

## IV.    DISCUSSION

### A.    The Superior Court Did Not Abuse Its Discretion By Denying Burton's Post-Trial Motion To Amend His Complaint.

Burton contends that Fountainhead's decision to republish Lanning's 2011 letter in its mid-trial correspondence with Princess was a new instance of defamation that the parties then litigated by consent. He argues that the superior court therefore abused its discretion when it denied his post-trial motion to amend his complaint to include a new defamation claim. But the record does not support the contention that the republication, though raised as an issue toward the end of trial, was then litigated as a separate claim.

Under Civil Rule 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." But "[i]mplied consent . . . is . . . difficult to establish and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. If they do not, there is no consent and the amendment cannot be allowed."[21] We have recognized trial by consent when the new issue was identified at the beginning of trial and litigated by both sides,[22] but not when the parties

---

[21]    *Tufco, Inc. v. Pac. Envtl. Corp.*, 113 P.3d 668, 673 (Alaska 2005) (ellipses in original) (quoting 6A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1493 (2d ed. 1990)).

[22]    *See Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 164 (Alaska 2012) (noting that the claim was "generally covered in the pleadings" and "actively litigated by both parties at trial"); *Sparks v. Gustafson*, 750 P.2d 338, 341-42 (Alaska 1988) ("Although the theories which plaintiffs presented for trial were murky at best, [defendant's] counsel indicated at the beginning of trial that he viewed plaintiffs' claim as one for unjust enrichment and was prepared to try the case as such.").

failed to actively litigate the claim[23] or when one party did not have the opportunity to contest it.[24]

Here, though Fountainhead appears to concede on appeal that "the issues raised by the amendment" were tried by consent,[25] the record does not show that the issues were litigated *as a new and separate claim*. The issue of re-publication arose mid-trial when the superior court asked Fountainhead's president whether his company had ever informed Princess that Burton was not in fact "banned" from Fountainhead property, giving Princess the opportunity to correct its internal records about the reason for Burton's termination. The court "invite[d] the parties, while we have a break tonight, to look and see if they might not see how they could address this problem with what Princess heard in 2011 and maybe what Princess should have heard."

The next day Fountainhead recalled Lanning, its manager of operations and personnel, to the stand as its last witness. Lanning testified that she had sent a letter to Princess the night before "[b]ecause the [c]ourt asked us to." The letter informed

---

[23]     *See Tufco*, 113 P.3d at 673-74; *Sparks*, 750 P.2d at 341 (noting that "the court refused to find implied consent to try an issue on which the evidence was brief, undeveloped, and one[-]sided" (citing *Alaska Prot. Servs., Inc. v. Frontier Colorcable, Inc.*, 680 P.2d 1119, 1124 (Alaska 1984))).

[24]     *See Hill v. Ames*, 606 P.2d 388, 390 (Alaska 1980) (concluding that the "appellee did not have an opportunity to put in countervailing evidence on those theories, . . . the court was not apprised that those questions were to be litigated," and the appellant failed to file a motion to amend); *but see Sparks*, 750 P.2d at 341 (concluding that, unlike in *Hill*, the defendant's counsel was aware of the plaintiffs' theory of the case from the beginning of trial "and was prepared to try the case" on that theory (citing *Hill*, 602 P.2d at 390)).

[25]     Fountainhead's brief notes that "failure to amend does not affect the outcome when the issues raised by the amendment are tried anyway, as was the case here."

Princess that Burton had never in fact been "banned" from Fountainhead properties, and it included as an attachment the letter Lanning had sent Burton in May 2011 outlining the company's concerns about his attitude. The 2011 letter also mentioned "an incident where [Burton was not] supportive of a management decision while in the presence of guests," while acknowledging that Fountainhead lacked any other details about that incident.

The court interjected that it had intended something else: "[I]t wasn't that I said you should send any particular letter, the idea was to have you use the time to talk among yourselves to see if, perhaps, there is a way that you could help overcome this stigma on [Burton's] record." The court further observed, "I think actually this [new letter] probably did more damage than good."

Fountainhead's new correspondence was admitted into evidence without objection, and Burton's attorney cross-examined Lanning about her 2011 letter. But although Burton's attorney stated that he did "not agree[]" that the new correspondence was "a valid, proper retraction" of the earlier defamation, he did not suggest that it was itself a new, separate instance of defamation. Nor did he address the new correspondence during Burton's brief rebuttal case.

Instead, it was only when Burton moved to amend his complaint in February 2015, two months after the close of evidence, that he first asserted that the mid-trial correspondence was a re-publication and hence a new libel. The superior court heard closing arguments several days later and announced that "the motion to amend the complaint is not ripe and won't be considered as part of this oral argument" because the court wanted to "go ahead [with its verdict] on the evidence that was presented at the trial." Burton nevertheless addressed his motion to amend in his closing argument, arguing that the mid-trial letter further damaged him. Fountainhead did not respond to that argument. The court reiterated at the end of the hearing that the motion to amend

was not ripe and that the court did not want "another volume of post-trial litigation," but it said it would consider whether the new letter contributed to Burton's damages. The court's later written order confirms that this is what it did.

This record does not support Burton's contention that a new defamation claim was tried by consent. The mid-trial correspondence was not entered into evidence until the trial's last day.[26] Burton's counsel did not call it a new instance of defamation at the time. Without notice that a new claim had arisen, Fountainhead lacked the opportunity or incentive to mount a defense to it as a separate claim.[27] It was therefore reasonable for the court, when considering Burton's later motion to amend, to observe that a new defamation claim could not be resolved without "another volume of post-trial litigation" addressing the specific circumstances of the mid-trial letter.

Instead of a separate claim for defamation, the letter was treated at trial as evidence of Fountainhead's failure to properly remedy the defamation that Burton had pleaded at the outset; the court accordingly considered the letter in calculating Burton's damages. The court thus treated the alleged re-publication just as the parties had at trial — as evidence relevant to the claims already pleaded. No amendment of the complaint was necessary for this purpose.

Nor was Burton entitled to an amendment to conform the pleadings to a new, mutually litigated claim of defamation. Trial by implied consent is "difficult to establish," and the record supports a conclusion that it was not established here.[28] The

---

[26]     *Cf. Sparks*, 750 P.2d at 341-42 (noting that issue tried by consent was raised at the beginning of trial).

[27]     *See Tufco*, 113 P.3d at 673.

[28]     *Id.* (quoting WRIGHT, MILLER & KANE, *supra* note 21, § 1493).

superior court did not abuse its discretion when it denied Burton's motion to amend his complaint.[29]

## B. The Superior Court Did Not Err In Finding That Fountainhead Was Protected By A Conditional Business Privilege.

The superior court found that Fountainhead "was within its rights" when it decided to reject Burton's employment at Bear Lodge and that it was protected by a business privilege when it reported this decision to Princess. The court decided that Fountainhead's only potential liability could be for its abuse of that privilege when it made the two unsubstantiated claims: that Burton had an altercation with a guest and that he had defaced hotel property. Burton argues that the court applied the wrong legal standard in analyzing whether Fountainhead's decision was privileged, clearly erred in finding that the decision was made in good faith, and abused its discretion by failing to adequately explain its finding.

One of the necessary elements of a claim for tortious interference with a prospective business relationship[30] is the "absence of privilege or justification for the

---

[29] Burton also challenges the superior court's "refus[al] to rule that [Fountainhead's] December 10, 2014 written publications to Princess libeled Burton." But as discussed above, the superior court did not abuse its discretion when it declined to consider a separate claim of libel. And since the question whether the December 2014 correspondence constituted defamation involves factual issues which were not decided below, the question is not properly before us.

[30] On appeal Burton identifies his claim as one for tortious interference with an employment contract. We address his argument instead as he framed it in the trial court — as one for tortious interference with a prospective business relationship — but we note that the law governing the two claims often overlaps. *See, e.g.*, *Cornelison v. TIG Ins.*, 376 P.3d 1255, 1269 (Alaska 2016) (noting that "[t]he superior court analyzed [the plaintiff's] claim as either a tortious interference with contract claim or a tortious interference with a prospective economic advantage claim" but deciding to consider the claim "to be one for tortious interference with contract because no prospective business (continued...)

defendant's conduct."[31] We agree with the superior court's decision that Fountainhead's conduct in this case was subject to a conditional business privilege. When considering claims of tortious interference, we recognize a clear distinction between persons who interfere with the contracts of competitors and those who interfere with contracts in which they have a direct interest themselves — and "where a direct interest in a contract is involved, there is reason to be more liberal in granting the privilege to interfere."[32] Accordingly, "where there is a direct financial interest in a contract, the essential question in determining if interference is justified is whether the person's conduct is motivated by a desire to protect his economic interest, or whether it is motivated by spite, malice, or some other improper objective."[33]

---

[30](...continued)
relationship [was] at issue.").

[31]    *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003) (citing *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000)). The claim's elements are: "(1) an existing prospective business relationship between [the plaintiff] and a third party; (2) defendant's knowledge of the relationship and intent to prevent its fruition; (3) failure of the prospective relationship to culminate in pecuniary benefit to the plaintiff; (4) conduct of the defendant interfering with the prospective relationship; (5) damages caused by the defendant; and (6) absence of privilege or justification for the defendant's conduct." *Id.* (citing *Odom*, 999 P.2d at 132).

[32]    *Bendix Corp. v. Adams*, 610 P.2d 24, 30 (Alaska 1980).

[33]    *Id.* at 31. In *Bendix* we recognized a parent company's privilege to interfere in contractual relations between its subsidiary and a third party. *Id.* In *Waldroup v. Lindman* we recognized an insurance company's privilege to interfere with a physician-patient relationship by denying a claim for medical payments. 28 P.3d 293, 297-99 (Alaska 2001).

Burton argues that Fountainhead's decision to reject his employment at Bear Lodge was "motivated by animus, malice, and a desire to injure Burton."[34] But a party's motivation "for invading the [prospective business relationship] of another is normally [an issue] for the trier of fact, particularly when the evidence is in conflict."[35] We give the trial court's factual determinations "particular deference" when they are based on oral testimony, "because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[36] Here, the superior court found that Fountainhead acted "within its rights" except with regard to the two defamatory statements, implicitly concluding that the privilege was not otherwise abused. That Fountainhead was motivated to protect its legitimate business interests, rather than by malice or spite, has ample support in the record.[37]

---

[34] *See RAN Corp. v. Hudesman*, 823 P.2d 646, 648 (Alaska 1991) (observing that an interested party retains the privilege only so long as he acts in good faith, and "not where he is motivated by spite, malice, or some other improper objective"); *Alyeska Pipeline Serv. Co. v. Aurora Air Serv., Inc.*, 604 P.2d 1090, 1094 (Alaska 1979).

[35] *Aurora Air*, 604 P.2d at 1094 (citing *Am. Sur. Co. v. Schottenbauer*, 257 F.2d 6, 12-13 (8th Cir. 1958); *Cal. Beverage & Supply Co. v. Distillers Distrib. Corp.*, 323 P.2d 517, 524 (Cal. Dist. App. 1958); *Barlow v. Int'l Harvester Co.*, 522 P.2d 1102 (Idaho 1974); *Owen v. Williams*, 77 N.E.2d 318 (Mass. 1948)).

[36] *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[37] Because the court's finding that Fountainhead did not act with an unlawful motivation is implicit in its other conclusions and its discussion of the evidence, we also reject Burton's argument that the court abused its discretion when it failed to make express findings about Fountainhead's motivations. *See MAPCO Express, Inc. v. Faulk*, 24 P.3d 531, 537-38 (Alaska 2001) ("A trial court's findings are sufficiently 'clear and explicit' if they (i) allow for meaningful appellate review and (ii) resolve all critical issues and disputes between the parties." (citing *Sullivan v. Subramanian*, 2 P.3d 66, 69-72 (Alaska 2000); *Beaulieu v. Elliott*, 434 P.2d 665, 670 (Alaska 1967))).

We affirm the trial court's determination that Fountainhead was protected by the conditional business privilege and that it did not abuse the privilege except with regard to the two defamatory statements Arnold made to Bradish.[38]

**C.    The Superior Court Did Not Clearly Err In Deciding That Fountainhead's Defamatory Statements Did Not Cause Burton's Termination By Princess.**

The question remains whether Fountainhead tortiously interfered with Burton's prospective business relationship with Princess through its two defamatory and therefore unprivileged statements:  that Burton had an altercation with a guest and that he defaced hotel property.  The superior court concluded that Burton failed to prove causation, finding that his termination was caused not by Fountainhead's defamatory statements to Princess but rather by Burton's "refusal to work at Princess locations besides Bear Lodge."  Burton contends this was clear error, but we disagree.

Bradish, Burton's supervisor at Princess, testified that Burton advised him throughout the 2011 hiring process that he "could only work at Bear Lodge, as opposed

---

[38]    By discussing whether Fountainhead's actions were subject to a qualified business privilege we do not mean to overlook the possibility that Fountainhead was not liable for tortious interference with a contract because it was in effect a party to the contract.  *Compare Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 31 n.19 (Ariz. 2002) (en banc) (declining to decide "whether a party to a tripartite contract can be liable in tort for interfering with rights as between the other parties to the agreement"), *with Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 503 S.E.2d 278, 283 (Ga. 1998) ("The intended third-party beneficiary of a contract, legally authorized to enforce the contract, cannot be held liable for tortious interference since he is not a stranger to the contract." (citing *Cohen v. William Goldberg & Co.*, 413 S.E.2d 759 (Ga. 1991))).  *See also K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 716 (Alaska 2003) (holding that because a contractual assignment "essentially gave [the defendant] the rights of a party, [the defendant] was not a true outsider to the contract, and thus [a claim for tortious interference with a contract] could not lie against him").  We decide the issue as the superior court and the parties framed it, as one of privilege.

to other Princess locations, due to [his] lack of transportation." Bradish testified that although Burton was scheduled to work at a non-Fountainhead hotel the first few days after training, Burton told him that "due to transportation, he [couldn't] reliably commit to showing up to those locations on a continuous basis." Bradish testified that he offered Burton work at other locations after Bear Lodge turned him away but "it was still the same case . . . he had no transportation still." According to Bradish, this was ultimately why Burton was terminated.

Burton conceded at trial that his only dependable means of transportation were walking and taking taxis. His May 28, 2011 email to Bradish, anticipating his termination, reminded Bradish that "[s]ince the first day we talked, you already know that it is not . . . practical for me to work at any other location than Bear Lodge except on rare occasions." And when the court questioned him persistently on this point during trial, Burton said repeatedly that he did not tell Bradish he was open to working at other locations because it would be "embarrassing," given his view that Princess would not consider him for those other assignments unless he first "cleared up" the issues with Fountainhead. After considering this evidence the court concluded that while Fountainhead prevented Burton "from having his ideal job at Bear Lodge," it was Burton's own "refusal to work at Princess locations besides Bear Lodge" on anything other than a short-term and occasional basis that caused Princess to terminate his employment.

Arguing that this was error, Burton relies in part on Bradish's deposition testimony, which Bradish reaffirmed at trial. Bradish testified that when Arnold told him why Fountainhead did not want Burton working at Bear Lodge, Bradish trusted Arnold's information a "[h]undred percent" and was glad he learned it early in the season; he testified that he did not "want to have someone on [the Princess] team that potentially would have, you know, had these issues with defacing property or altercations with

-19-                                                                         **7158**

guests." According to Burton, this proves that Arnold's defamatory statements were necessarily a "substantial part" of the causal chain leading to his termination and therefore must have been a legal cause of his harm as a matter of law.

But Bradish's trial testimony, taken overall, was equivocal. He testified repeatedly that he felt "caught in the middle" and did not know what really happened, which is why he gave Burton a "grace period" to work things out with Fountainhead. The superior court noted that Princess did not terminate Burton until 13 days after Fountainhead's defamatory statements, following Burton's May 28 email "reiterat[ing] his inability to work at Princess locations besides Bear Lodge." The court specifically found that "had [Burton] told Bradish that [he] was willing to work at Princess locations besides Bear Lodge, Princess would not have terminated [Burton's] employment." It was up to the superior court to resolve apparent inconsistencies in witness testimony when making its finding about causation, and we cannot say it clearly erred in doing so.[39]

## D. The Superior Court Did Not Err In Its Award Of Damages.

We have recently reiterated that "[a] defamation claim requires proof of four elements: '(1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence; and (4) either per se actionability or special damages.' "[40] The superior court found that Burton proved the first three elements plus per se actionability, because the allegations that he had an altercation with a guest and defaced hotel property were "only susceptible to an interpretation that injure[d] [Burton's] reputation, particularly in light of [his] work in the tourism

---

[39]     *Lentine v. State*, 282 P.3d 369, 375-76 (Alaska 2012) ("[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence." (alteration in original) (quoting *In re A.F.M.*, 15 P.3d at 262)).

[40]     *Alaskasland.com, LLC v. Cross*, 357 P.3d 805, 820 (Alaska 2015) (quoting *State v. Carpenter*, 171 P.3d 41, 51 (Alaska 2007)).

industry."[41] The court awarded Burton $15,000 in general damages for the defamation per se but decided that he was not entitled to special or punitive damages.

Burton challenges this award on three grounds. First, he argues that the court should have included lost wages and benefits in his general damages award; second, he argues that the court should have awarded special damages because the defamation was a substantial factor in causing him special harm; and third, he argues that the superior court should have awarded punitive damages. We reject these arguments.

### 1. General damages

The superior court's $15,000 general damages award was intended as compensation for "the mental anguish and humiliation that [Burton] suffered as a result of [Fountainhead's] defamatory per se statements to Princess, in addition to the harm [Fountainhead's] statements caused to [Burton's] reputation in the Fairbanks tourism industry." Burton argues that this general damages award should also have included the value of his lost wages and benefits. But general damages in defamation cases compensate only for reputational harm.[42] In contrast, "[c]oncrete financial losses, such as . . . lost wages . . . , are considered special damages."[43]

---

[41] *See Alaska Statebank v. Fairco*, 674 P.2d 288, 295 (Alaska 1983) ("It has been held that statements injurious to plaintiff's business reputation are defamatory per se . . . ." (citing *Cook v. Safeway Stores, Inc.*, 511 P.2d 375, 378 (Or. 1973) (en banc))).

[42] RESTATEMENT (SECOND) OF TORTS § 621 cmt. a (AM. LAW. INST. 1977).

[43] *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 504 F.3d 189, 203 (1st Cir. 2007); *see also* RESTATEMENT (SECOND) OF TORTS § 621 cmt. a (AM. LAW. INST. 1977) (defining special harm as "the loss of something having economic or pecuniary value").

As for the amount of general damages, trial courts are permitted "a great deal of latitude."[44] "Since proof of damages is not required if words are deemed actionable per se, they clearly cannot be computed with mathematical certainty."[45] Burton argues that the December 2014 letter to Princess, as a re-publication of Fountainhead's previous libel, justified "an increase in Burton's general damages as an aggravating factor." But the superior court expressly took the mid-trial letter into account, and its general damages award must therefore reflect any increase the court believed was warranted by this evidence. We see no clear error in the award of general damages.

## 2. Special damages

The superior court found that Fountainhead's defamatory statements did not cause Burton special harm because, as explained above, he was terminated because of his "refusal to work at alternative Princess locations," not because of the defamation. Burton appeals this finding, arguing that the court failed to apply the "substantial factor" test of legal causation and that under this test, as properly applied, "Arnold's slanderous per se statements about Burton constituted a legal cause of Burton's special harm as a matter of law."

The "substantial factor test" generally requires both "but for" causation — that the injury would not have occurred "but for" the tortious act — and that the tortious act "was so important in bringing about the injury that reasonable individuals would regard it as a cause and attach responsibility to it."[46] The determination of proximate

---

[44] *Alaska Statebank*, 674 P.2d at 295.

[45] *Id.* (citing *Eslinger v. Henderson*, 457 P.2d 998, 1000 (N.M. 1969)).

[46] *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007) (citing *Vincent by*
(continued...)

cause usually requires the resolution of questions of fact by the fact-finder; it "becomes a matter of law only where reasonable minds cannot differ."[47]

To the extent Burton argues that the superior court failed to apply the substantial factor test, we disagree. Although the court did not elaborate on the legal standard for causation in its discussion of tortious interference, where it first concluded that Burton failed to prove causation, we see no reason to believe that the court misunderstood the basic legal concepts it employed.

As explained above, the superior court decided in the context of the claim for tortious interference that Fountainhead's defamatory statements "did not interfere with [Burton's] relationship with Princess" or cause Burton's "termination from Princess and resulting damages." Indeed, the trial court found that "the evidence *overwhelmingly shows*" that Fountainhead did not terminate Burton's employment upon hearing the defamatory statements but only later, and the court plainly credited Bradish's testimony "that he would not refuse to hire a prospective employee based on unconfirmed accusations" like those at issue here. (Emphasis added.) As noted above, we cannot say that these findings of fact are clearly erroneous. And based on this view of the facts, the court did not clearly err in finding no "but for" causation.

Burton also argues that the superior court clearly erred when it failed to find that Princess identified Burton as ineligible for rehire because of Fountainhead's defamatory statements. The superior court found it could not make this causal connection because there was "insufficient evidence . . . as to the source, timing, or

---

[46](...continued)
*Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 851 (Alaska 1993)).

[47]     *Id.* (citing *P.G. & R.G. v. State, Dep't of Health & Human Servs., Div of Family & Youth Servs.*, 4 P.3d 326, 334 (Alaska 2000); *Turnbull v. LaRose*, 702 P.2d 1331, 1336 (Alaska 1985)).

impact of such labeling." The one Princess witness who was asked about the ineligibility label, a division manager, could not explain it. And contrary to Burton's argument, the defamation was not the only possible explanation for the ineligibility label; it could have been Fountainhead's privileged decision to exclude Burton from working at its hotel properties or Burton's unwillingness to work wherever Princess wanted to station him. It was not clear error to find no "but for" causation in this context either.

Given the evidence at trial, reasonable minds could differ as to whether the defamatory statements were a substantial factor in bringing about Princess's termination of Burton's employment and its identification of Burton as ineligible for rehire. Because the only special damages Burton sought were those related to his termination and his ineligibility for rehire, we do not disturb the superior court's finding that Burton "failed to prove that [he] suffered special harm as a result of [Fountainhead's] defamatory statements."

### 3. Punitive damages

Finally, Burton argues that the superior court erred when it found he was not entitled to punitive damages. To recover punitive damages he had to prove by clear and convincing evidence "that the defendant's conduct (1) was outrageous, including acts done with malice or bad motives; or (2) evidenced reckless indifference to the interest of another person."[48] Though the superior court "found by a preponderance of the evidence that [Fountainhead] was reckless in making defamatory statements about

---

[48]     AS 09.17.020(b). Clear and convincing evidence is characterized as "greater than a preponderance, but less than proof beyond a reasonable doubt." *Theresa L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 353 P.3d 831, 838 (Alaska 2015) (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 187 (Alaska 2009)).

[Burton]," it "refuse[d] to find such recklessness by clear and convincing evidence."[49] Burton now contends that "[t]he entire record contains clear and convincing evidence that [Fountainhead] management consciously and deliberately disregarded Burton's rights," and that the superior court "overlook[ed] additional, uncontradicted evidence" that raised Burton's proof to the level of clear and convincing.

But "[i]n a bench trial, the judge . . . determin[es] . . . how to weigh the evidence presented."[50] In this case the superior court was required to assess the testimony and credibility of Fountainhead's witnesses, including Arnold's recollection of his conversation with Bradish and Fountainhead's subsequent handling of the issue. The superior court explicitly considered many of the facts Burton claims it failed to consider. The court recognized that "[a]ll of [Fountainhead's] agents . . . have . . . denied knowing of any incident" that would suggest the conduct described in the defamatory statements actually occurred. The court noted Fountainhead's failure to respond adequately to several of Burton's communications during the time he was attempting to set the record straight. The court observed that Fountainhead "had several opportunities to ameliorate the effects of [its] defamatory statements about [Burton] to Princess both in 2011 as well as during trial" but "refused to properly cure their defamatory statements, even when provided an opportunity to do so during trial."

---

[49] *See Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdivision*, 902 P.2d 766, 774 n.15 (Alaska 1995) ("Where one has the burden of proving asserted facts by a preponderance of the evidence, he must induce a belief in the minds of the jurors that the asserted facts are probably true. If clear and convincing proof is required, there must be induced a belief that the truth of the asserted facts is highly probable." (quoting *Curran v. Mount*, 657 P.2d 389, 391 n.4 (Alaska 1982))).

[50] *Wasserman v. Bartholomew*, 38 P.3d 1162, 1166-67 (Alaska 2002) (citing Alaska R. Civ. P. 52(a)).

But the superior court ultimately decided that the evidence of recklessness, while satisfying the preponderance-of-the-evidence burden, fell short of clear and convincing. We recognize that the question is a close one, but the court's determination finds support in the evidence.[51] The court could have considered the fact that Arnold did not volunteer the unfounded examples of Burton's past conduct but gave them only when Bradish pressed him for an explanation of Fountainhead's decision. Bradish testified that Arnold "was being fairly professional about it and said, you know, . . . I can't really go into it." And because Arnold himself testified he had no recollection of making the defamatory statements and Bradish's recollection of them was vague and inconsistent, the court could have had some reservations about what Arnold actually said or intended. With regard to the allegation that Burton had defaced hotel property, Bradish testified that what Arnold said could be taken "multiple ways." Bradish testified, "[I]n the back of my mind, I'm not 100 percent sure" whether Arnold meant damage to physical property or damage to "the reputation of the property. I couldn't tell you."

We appreciate the difficulty the superior court faced in having to draw a line between what it believed Burton had proven to be more likely true than not true and what remained to be proven by clear and convincing evidence. We cannot say the court clearly erred in drawing the line where it did. We therefore affirm the court's denial of punitive damages.

## V.     CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[51]     *See Nelson v. Progressive Corp.*, 976 P.2d 859, 865 (Alaska 1999) (affirming jury's decision not to award punitive damages "even though it found knowing misrepresentation" in part because the jury could have found knowing misrepresentation by a preponderance but not by clear and convincing evidence).